## 70. GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY *v.* BARFIELD.

1. The terms of the Civil Code, § 4116, requiring a copy of the cause of action sued on to be attached to the summons in a justice's court, do not necessitate a specific allegation of negligence, or a detailed relation of the acts from which negligence may be inferred, or by which it is to be proved, or that the plaintiff set out a statement of the facts which constitute the alleged negligence.

2. Hence a summons in a suit in a justice's court against a carrier, for damage to goods shipped, which alleges that the plaintiff claims the difference between a named amount which his goods were worth when sound, previous to the injury, and a stated sum for which he sold the goods after they had been damaged; and alleges damage in a certain amount, due to the negligence of defendant and without fault of plaintiff, is not demurrable, under the ruling in *Louisville & Nashville R. Co.* v. *Cody*, 119 *Ga.* 371. The requirement as to summons and copy in a justice's court is an exception to the general rules of pleading. The form of the action is not changed by appeal to the superior court.

3. It was not error to allow evidence as to the condition of the car, thus enabling the jury to determine whether the car was or (as alleged by the plaintiff) was not a safe car, and whether the injury (if any) was caused by the act of God, or by the negligence of the carrier. There was no error in the charge of the court to which exception is taken.

4. A variance between the allegata and probata which arose merely from the introduction in evidence by the defendant of a way-bill in which the initials of the consignee's name were different from those of the plaintiff (though the surname was the same) was not necessarily material or fatal. When it appears that such way-bill was prepared and issued without the direction and knowledge of the plaintiff, and in his absence, and the evidence of variance presented by the one party is fully met by evidence on the part of the other, showing the true consignee and owner, and it is further shown that the carrier treated such party (whose initials do not correspond with those in the way-bill) as the owner, delivering to him the freight and accepting from him the charges for its carriage, it is not a question of variance between the allegations and the proof, so far as the plaintiff's case is concerned, but instead raises squarely an issue of fact for determination by the jury. A variance between the allegations and the proof, to be material or fatal, must be apparent and uncontradicted.

5. No injury can be said to be the act of God which can, under any fair view, be attributed to the negligence of man.

Appeal, from Bibb superior court—Judge Felton.    April 24, 1906.

Argued February 6,—Decided February 14, 1907.

*Hardeman & Jones,* for plaintiff in error.

*M. G. Bayne,* contra.

RUSSELL, J.  H. L. Barfield brought an action against the Georgia Southern & Florida Railway Company, in a justice's court, and obtained judgment for $57.89. The defendant company appealed to a jury in the superior court of Bibb county, where a verdict was rendered by the jury for the same amount as that of the judgment of the justice. The defendant moved for a new trial. The judge of the superior court overruled the motion, and thereupon the writ of error, which brings the case to our consideration, was sued out. The action was begun by issuance and service of the following summons from the justice's court:

"Office of J. H. L. Gerdine, N. P. & ex-officio J. P., State of Georgia, Bibb County.  564th district, G. M.

"To any lawful sheriff, deputy sheriff, or constable of said county, greeting:  The defendant, Georgia Southern & Florida Railway Company, is hereby required to be and appear at the next

justice's court to be held in and for said district, at the Masonic Temple, 518 Mulberry Street, Macon, Georgia, on the first Saturday of May next, by ten o'clock a. m., to answer the complaint of H. L. Barfield for damages to property as set out below, and is annexed to this summons; or in default, the court will proceed as to justice shall appertain. Hereof fail not. Given under my hand and seal, this 20th day of April, 1905. J. H. L. Gerdine, N. P. & ex-officio J. P. (Seal.)

"(Copy.) For that on Jan. 1st, 1905, said plaintiff caused to be loaded on a car furnished by said defendant as a safe car, at Hahira, Ga., 128½ bushels of sweet potatoes, to be shipped to him at Macon, Ga., in good condition; and by negligence of said defendant, said potatoes were injured and damaged in the sum of $57.89, by being allowed to freeze while in possession of said company, said potatoes being of the value of $128.50 delivered to said defendant, and when delivered were only worth $70.61; all of said damage being by the fault and negligence of said defendant, and without fault of the plaintiff. M. G. Bayne, plaintiff's attorney." This was afterwards amended as follows: "And now comes plaintiff and amends his itemized statement, and says that the said potatoes were shipped on Jan. 25th, 1905, instead of Jan. 1st, 1905."

In the justice's court and also before the trial of the appeal in the superior court, a demurrer was filed, asking that the suit be dismissed for the reason that the summons set forth no cause of action against the defendant, and also especially because "there is no allegation of negligence against the defendant that would authorize plaintiff to recover." This demurrer was overruled by the judge of the superior court, and exceptions pendente lite were filed to this ruling. In its motion for new trial the defendant complained: (1) That the verdict was directly contrary to the evidence and without evidence to support it. (2) Because the allegata and probata failed to correspond, and there was a fatal variance between the allegations and proof, the summons alleging shipment to H. L. Barfield, and the proof showing shipment to J. F. Barfield. (3) Because the verdict is contrary to law and to the principles of justice and equity, and especially to the following principles of law: A common carrier is not liable for goods in his care where the injury is occasioned by the act of God, unmixed

with the carrier's negligence. "Movant contends that the evidence in this case showed, without contradiction, that the goods in question were frozen while in the carrier's possession, and that the weather was so extreme as that they would have frozen in the best protected cars; hence no act or default of the carrier contributed to the said injury." (4) Because the court erred in permitting H. L. Barfield, the plaintiff, to testify: "I found that the car was an old car, and there was a board off the end of it, right at the corner; the board or opening was possibly six inches wide at the top and come to a point about half way the car; and the door, in addition, was not in good condition. It had been opened and shut, and nailed and fastened, in the way the freight cars open and shut, so often that you could not fasten it closely, although it would have answered any purpose for ordinary purposes, but it did not exclude the air at all; and the fact that the door not being in good shape and the hole in the end of the car, I called Toole's attention to it, and told him at the time I did not believe the potatoes would have frozen if that had been a real good box-car at that time." To the introduction of said testimony defendant objected because there was no notice of any such defect or negligence, in the summons; and the court overruled the objection and admitted the evidence. (5) Because the court erred in charging the jury as follows, to wit: "They may do that by showing that they have exercised that degree of diligence which the law requires of them, in the particular character of cars subject to investigation and under investigation at the time; and with reference to freight the rule is that no loss or damage which is inflicted upon freight while under their control is one that they are not liable for; that is to say, no excuse avails the carrier, unless the loss was occasioned by the act of God or the public enemies of the State. In order for the carrier to avail himself of the act of God as excuse, he must establish, not only that the act of God ultimately occasioned the loss, but that his own negligence did not contribute thereto." Defendant's objection to this charge is that it excluded any and all defences, and was an expression of opinion that defendant was liable, and not excused by the act of God or of public enemies. Upon the hearing, the judge overruled the motion for new trial. In his bill of exceptions the defendant (now plaintiff in error) excepted to the order overruling the damurrer, and to

the order refusing a new trial; and therefore the questions we are to determine are: (1) Was it error to overrule the demurrers? (2) Should a new trial have been granted upon the grounds stated?

We think there was no error in overruling the demurrer. Probably, under the doctrine laid down in *Louisville & Nashville R. Co.* v. *Cody,* 119 *Ga.* 371, the demurrer might have been good if the cause had originated in some court other than the justice's court; but in the justice's court no formal pleadings are required. "The law does not enjoin upon the plaintiff the obligation to fully and distinctly set forth his cause of action with the same minuteness and clearness that is required in pleadings in courts of record. The suit is brought simply by the issuing of summons, attached to which is usually a statement giving some indication of the nature of the debt sought to be recovered. This is sufficient if enough is stated to put the defendant on notice . . as to the character of the claim sought to be enforced." *Jones* v. *Dodd,* 108 *Ga.* 516. The act of Sept. 21, 1881, which is now embodied in the Civil Code, §4116, is a remedial statute, and, as was well said by Chief Justice Fish, delivering the opinion in *Southern Ry. Co.* v. *Collins,* 118 *Ga.* 413: "Before its passage . . the plaintiff in an action in a justice's court was not required to put the defendant upon notice of *the nature of the demand* upon which he was sued. Defendants were, therefore, often placed at a disadvantage in defending suits instituted in justice's courts. To remedy the defect in the law the statute of 1881 was passed. The general rule is that remedial statutes are to be liberally construed, and in construing them the old law, the mischief, and the remedy are to be taken into consideration. The rule of liberal construction applies with peculiar force to a statute relating to pleadings in a justice's court, where the same degree of strictness and precision in pleading is not required as in the higher courts. . . The object of the law requiring a copy of the cause of action to be attached to the summons being that the defendant shall be informed of the *nature of the plaintiff's* demand against him, it is immaterial whether the statement of the cause of action is contained in the body of the summons or is actually attached to the summons." The present case, like *Southern Ry. Co.* v. *Collins,* falls within the provision of the Civil Code, §4994, which declares that "no technical or formal objections shall invalidate any petition or proc-

ess, but if the same substantially conforms to the requisitions of this code, and the defendant has had notice of the pendency of the cause, all other objections shall be disregarded: provided, there is legal cause of action set forth as required by this code." As bearing upon the same principle, see *Howell* v. *Field,* 70 *Ga.* 592; *Southern Ry. Co.* v. *Varn,* 102 *Ga.* 764; *Davis* v. *County of Bibb,* 116 *Ga.* 26. We do not find that the case of *Harrison* v. *Southern Ry. Co.,* 120 *Ga.* 1054 (cited by plaintiff in error, and which was a suit in the superior court) has any bearing upon the question now before us. The court was right in overruling the demurrer.

We come then to the second assignment of error, based upon the overruling of defendant's motion on the ground therein stated. The evidence shows that the plaintiff was the owner of the potatoes which he alleged had been damaged, and that he was so treated by the defendant, who delivered them to him and accepted from him the freight for their carriage. There was no evidence that he was not the owner. It is true that the bill of lading which was introduced was in these words: "Received by the Georgia Southern & Florida Railway Company at Hahira, Ga. Station, 1/25/1905, from H. L. Barfield, the property described below, in apparent good order, marked, consigned, and destined as indicated below, which said carrier agrees to carry to said destination," etc. "Consignee, J. F. Barfield, Place, Macon, Ga. Articles, 60 sacks. s. potatoes; weight 7071; freight collect; car Sou. 200279; [signed] J. M. Johnson, Agent." Now, in view of the fact that the plaintiff swore he was the owner and should have been the consignee, and in view of the further fact that there was no evidence that he was at Hahira at the time the bill of lading was issued, or had any knowledge of its contents, or was in any way responsible for its wording, the fact that the name of the consignee was written as "J. F." instead of "H. L." Barfield, could have well been treated as being a clerical mistake of the company. But if that contention of the defendant in error be not sound, the bill of lading was introduced by the defendant, and at best would but raise the issue as to who was the owner; and the jury, having the testimony of the plaintiff that he was the owner, would have the right to determine that issue of fact, finding as they might determine the truth to be, from the conflicting evidence. Variance between the allegata and probata as to the ownership would be fatal (as insisted

by the counsel for plaintiff in error) if the evidence did not show that H. L. Barfield was the owner, or if by any rule he was estopped by the contents of the bill of lading from asserting his ownership. But in view of his testimony that he was the owner, there was no variance, so far as plaintiff's case was concerned, between the allegation and the proof. In view of the fact that the plaintiff could not take the goods from the depot without paying the freight, and that it was his duty in case of partial damage to do (as he did) everything within his power to lessen the damage devolving upon the company, and in view of the further fact that he was treated by them as the owner, we see nothing to prevent him from maintaining an action in the form in which he proceeded. The conduct of the railroad company estops it from relying upon its bill of lading, at least so far as the individuality of the consignor and consignee are concerned.

The next contention of the plaintiff in error is that the verdict is contrary to law, especially because a common carrier is not liable for injury occasioned by the act of God, unmixed with the carrier's negligence. He contends that the evidence shows "that the goods in question were frozen while in the carrier's possession, and that the weather was so extreme that they would have frozen in the best protected cars; hence no act or default of the carrier contributed to the said injury;" and we may consider the 4th and 5th grounds of the motion together with the foregoing (which is the 3d), because they are so closely connected that it is impossible to separate them, the 4th having reference to the evidence, and the 5th to the charge of the court bearing upon this subject. The evidence objected to was: "I found that the car was an old car, and there was a board off the end of it, right at the corner; the board or opening was possibly six inches wide at the top and come to a point about half way the car; and the door, in addition, was not in good condition. It had been opened and shut, and nailed and fastened, in the way the freight cars open and shut, so often that you could not fasten it closely, although it would have answered any purpose for ordinary purposes, but it did not exclude the air at all; and the fact that the door not being in good shape and the hole in the end of the car, I called Toole's attention to it, and I told him at the time I did not believe the potatoes would have frozen if that had been a real good box-car at that time."

14

As to the portion of the charge to which objection is made, it appears that (after having stated proper rules with reference to the burden assumed by the plaintiff, and the amount of evidence necessary to enable him to shift that burden, and after having stated the presumption arising against the company and the burden thereby placed on them to show non-liability) the court continued as follows: "They may do that by showing that they have exercised that degree of diligence which the law requires of them, in the particular character of cars subject to investigation and under investigation at the time; and with reference to freight the rule is that no loss or damage which is inflicted upon the freight while under their control is one that they are not liable for; that is to say, no excuse avails the carrier, unless the loss was occasioned by the act of God or the public enemies of the State. In order for the carrier to avail himself of the act of God as an excuse, he must establish not only that the act of God ultimately occasioned the loss, but that his own negligence did not contribute thereto." The objection urged in the 4th ground of the motion was that the evidence to which the defendant company objected was not specified in the summons; and as we have said above, we think this subject is fully settled by the decisions relative to summons in justices' courts, which we have cited. The complaint of the charge excepted to was that it was an expression of opinion that the defendant was liable, and was not excused by the act of God or of public enemies. We think that the portion of the charge excepted to, especially taken in connection with the context of the charge, is without error. The testimony to which objection is made was not objectionable upon the ground made, and was pertinent to the plaintiff's case. The charge, so far from being an expression of opinion that the defendant was liable, clearly left it open for the jury to determine whether the freezing of the potatoes was occasioned on account of the unusual severity of the weather to which some of the witnesses had testified, to which no act of negligence on the part of the company contributed, or whether the character of the car was such that the negligence of the company did contribute to the injury. An interesting question is presented by the brief for plaintiff's counsel as to whether a carrier is liable for injury to a shipment from cold, where the evidence shows that the goods would have been frozen, whether in or out of the carrier's

possession. It is not necessary for us to decide this question or multiply words in its discussion, because in our opinion injury and loss can never be attributed to the act of God if, in any fair view of the evidence, it can be held to be due to the act of man. And a review of the evidence shows that there was ample proof to authorize the jury to conclude in this case that if the car had been a safe and suitable car, the potatoes would not have frozen. Witness Flournoy swore, that he had had experience in shipping potatoes and fruit on cars, and that if cars were loaded on a warm day at Savannah, they would be ten degrees warmer inside the car than outside when the car reached Macon; and if there was an opening such as had been described by witnesses, he would say that all the warmth would have escaped. He further testified that a crack at the door would affect the temperature. He further testified that in the summer time, after you get in a box-car, you would almost fall from heat; and that in cars coming from Atlanta, loaded on a cold day, if, upon their arrival at Macon, one went in there on a warm day it would be colder than the outside, etc. He further swore that on January 26, 1905, the weather was cold, but on the 25th it was very warm; and if the potatoes had been put in a close car and taken out the next day, soon after they arrived (as they were), they would not have frozen. All of this testimony was submitted without objection, and could have well induced the belief in the mind of the jury, from the evidence of one who had years experience in the use of box-cars, that the freezing of the potatoes was due to the defective condition of the car. The jury had the right to base their verdict on the testimony of this witness, rather than on that of another, which did not accord with his. It was an issue of fact for their exclusive determination. They evidently found that the defendant was negligent in not providing a safe car. And as there is evidence to authorize their findings, we are not called upon to decide whether if perishable articles should freeze and it was uncontradicted that the carrier used all diligence, the freezing would be called the act of God. We need only say that in this case the charge to the jury is substantially the same as §2264 of the Civil Code, which says that "in cases of loss the presumption of the law is against him [the common carrier] and no excuse avails him unless it was occasioned by the act of God or the public enemies of the State." It may be that if

goods freeze in transit, which are loaded under such circumstances that the consignee could know as well as the carrier that they were likely to freeze, and the carrier used every known precaution to protect them against the cold, and they nevertheless froze and were damaged, the shipper would be estopped from collecting the claim for damages; but that is not the uncontradicted evidence in this case. Before the jury each case must stand upon its own facts. It is a question, in all such cases, of the negligence of the carrier; and negligence, as well as diligence, is a question of fact for determination in each case by the jury. In this case, in our opinion, the charge clearly presented the legal principles involved, and a finding in favor of either party would have been authorized; and the verdict of the jury, having been approved by the trial judge, should not be disturbed.          *Judgment affirmed.*