## 827. COWETA COUNTY *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

1. When, by the sharp process of subtraction and elimination, which our laws favor, all of the issues between parties have been reduced to a single point, the law applicable to the single remaining issue should be administered. Evidence not material to the issue is irrelevant, and instructions upon the law, although correct in the abstract, if not applicable to that issue are erroneous. The law to be applied by the court must be law pertinent to the contested issue of fact.

2. A plaintiff, by showing the delivery of his goods into the possession of a common carrier for the purpose of transportation, and establishing the fact of loss, raises a presumption of liability on the part of the defendant for their value, if the selfsame evidence does not show that the consequent loss was occasioned by the plaintiff's own negligence. The presumption of liability raised by section 2264 of the Civil Code may be rebutted, if it appears that the injury was caused by the plaintiff himself, whether the act which caused the injury be due to negligence or design. In other words, the provisions of that section have no reference to a case where the loss is attributable, either in whole or in part, to the act of the shipper himself.

3. While a carrier is liable, as an insurer, for the loss of freight which he accepts for carriage, and while generally he is required to accept for carriage all freight properly packed and delivered to him for the purpose of transportation, still a carrier is not required to accept for shipment all freight which may be tendered. If a carrier knows an article tendered him for carriage is injurious to the public health, public peace, or morals, or is likely to destroy the property of others, or if the property tendered for shipment is in such condition that it can not safely be transported, a carrier has the right to decline to receive the proposed shipment.

4. The court's charge did not intimate any opinion as to what had been proved, or withdraw from the jury the determination of what facts were necessary to constitute negligence. The question of negligence was not involved in the case, if the jury believed that the loss was caused by the act of the plaintiff itself. A carrier may be liable for the loss of freight, in spite of the most extraordinary diligence. But any shipper who, either before or after shipment, directly or indirectly, intentionally or unintentionally, causes the injury or destruction of his own property can not make the carrier pay for it.

5. Evidence, whether objected to or not, can be as effectually withdrawn by means of the charge of the court as by a ruling during the course of the trial.

6. The verdict for the defendant was demanded by the evidence. The charge of the court was clear and easy to be understood, and the only issues involved were fully and clearly presented. There may be some minor verbal inaccuracies, to be detected by a microscopic, grammatical analysis, but these do not afford any legal ground for a reversal.

Action for damages, from city court of Newnan—Judge Freeman. October 28, 1907.

Argued January 20,—Decided March 30, 1908.

*W. L. Stallings, R. O. Jones,* for plaintiff.

*Hall & Cleveland, J. E. Hall, W. C. Wright,* for defendant.

RUSSELL, J. Coweta County excepts to the overruling of a motion for a new trial. It appears from the record that the plaintiff in error brought suit against the Central of Georgia Railway Company, to recover as damages $597.44, the value of a convict car or wagon and its contents, burned while on one of the flat-cars of the defendant, as well as $25, the value of a grade plow. Upon the trial the jury returned a verdict in favor of the defendant. The motion for new trial, in addition to the general grounds, assigns error, in the nine grounds of the amended motion, on the rejection and introduction of certain testimony, on certain instructions of the court to the jury, and on the refusal of the court to

charge in accordance with certain requests presented in writing by the plaintiff.

We find 'no reversible error, either in the rulings of the court upon the testimony or in the instructions to the jury. Summarized, all of the grounds of the motion for new trial presented but two complaints. The first is that the case was not tried upon the theory that the plaintiff was entitled to recover unless the loss was occasioned by the act of God or the public enemies of the State. The second complaint is that the court judicially determined what constituted negligence under the facts in the case, and thus withdrew from the jury the plaintiff's contention upon this subject. In every case the issues are made by the pleadings, and the verdict should be in accordance with the law applicable to the particular facts shown in the testimony. The plaintiff's petition alleged, that S. S. Nash, as superintendent of Coweta county chaingang and in behalf of the county, delivered to the railroad company, for transportation from Senoia to Newnan, a certain convict car and its contents; that the agent of the company accepted said car for transportation, and that while in the company's possession the car was destroyed by fire, without the consent or negligence of the plaintiff, its officers, or employees; and that the failure of the company to deliver the convict car and its contents at Newnan on demand rendered the company liable for its value. In its answer the defendant denied these allegations and set up, as a defense, that if the property of the plaintiff was injured and damaged at the time alleged, it was not due to the fault or negligence of the defendant, its agents or employees. It pleaded, that the destruction of the property was due to the direct act of the agents and employees of the plaintiff, without the knowledge of the defendant or its employees; that the damage, if any, was caused by fire left inside the car by the agents and employees of the plaintiff, without the knowledge of the defendant.

The evidence introduced in support of the pleadings was practically without contradiction as to any material matter. Under the evidence introduced in behalf of the plaintiff itself, the controlling issue in the case was created. It was a question of fact whether the fire which destroyed the car and its contents was inside of the car without the knowledge of the defendant at the time that the car was delivered to it for shipment. The superin-

tendent of the Coweta county chain-gang desired to move the convicts from Senoia to Newnan. He arranged with the defendant's agent at Senoia to provide flat cars upon which to load his convict cars, which were sleeping cages in which the convicts slept. According to the uncontradicted testimony, the convict cars were provided with stoves, and the cages were covered with plank, to keep out the rain and cold. The cars are constructed very much like a freight-car with the doors and windows fastened up. The evening before the cars were delivered to the company, they were brought upon the platform of the depot, and the convicts slept in them that night. It was in February and the weather was cold. Mr. Nash, who had charge of the cars, testified that there was fire in the stove in the car which was burned, the night before and that morning, and the car was seen to be on fire about a half hour after it was placed upon the railway company's flat car. Mr. Nash testified further, that all of the fire was from the inside; there was no fire on the outside when he went to try to save the car. The convict cars were loaded on the flat cars of the railway company by the convicts, under the direction of Mr. Nash, who was the Coweta county superintendent. Before the agent of the railway company knew that they were placed upon the flat cars, or had examined them, he was told that they had been put upon the flat cars, and he went out to the track and inspected them, to ascertain whether they were securely fastened on the flat cars, and, not being fully satisfied, he had additional planks nailed in front and behind the wheels, to make the cars perfectly secure and steady. When the freight-train came in, an engine backed in on the sidetrack and carried these cars out on the main line, and it was then discovered that one of the convict cars was on fire. It is undisputed, in the testimony, that those who first discovered the fire saw the smoke issuing from the inside of the car; and there was no evidence that there was any fire whatever on the outside.

1. When, by the sharp process of subtraction and elimination, which our laws favor, all of the issues between parties have been reduced to a single point, the law applicable to the single remaining issue should be administered. Evidence not material to the issue is irrelevant, and instructions upon the law, although correct in the abstract, if not applicable to that issue, are erroneous. The law to be applied by the court must be law pertinent to the

contested issue of fact. From the above statement of the undisputed evidence it is clearly to be seen that there was but one question to be submitted to the jury, and that was whether the defendant company knew or ought to have known, at the time it accepted the car for carriage to Newnan, that there was fire inside the car. In other words, did the defendant assume a risk unusual and hazardous, and undertake to insure the plaintiff against the effects of its own negligence? A common carrier is bound to use extraordinary diligence in the transportation of goods for the public, and in case of loss the presumption of law is against him, and no excuse avails him unless the loss was occasioned by the act of God or the public enemies of the State. This principle of law was given to the jury as favorably as the plaintiff could expect, and applied to the pending case in language not to be misunderstood, in the following instruction by the court: "When plaintiff introduced evidence and made it appear to you, if they did make it appear to you, that the county delivered this property to the defendant company for shipment to Newnan, Georgia, and these articles of goods were not delivered to the county in Newnan, then the plaintiff would be entitled to recover. The law requires the defendant to deliver the property they have received and contracted to deliver." We think that this instruction was sufficient compliance with the written request of the plaintiff that the jury be instructed that "at common law and under the statute a common carrier was an insurer of the goods which he undertook to transport. Such is his legal liability, and he is liable unless the loss was occasioned by the act of God or the public enemies of the State." But while the prima facie liability of the carrier is one of the settled principles of the law, this principle, like every other, is qualified by others, which the experience of ages has shown to be inherent in justice. One of these is, that no one can take advantage of his own wrong; and from this is derived the rule as to which Elliott, in his work on Railroads (Vol. 4, §1454, p. 2263), says: "There never was a time when carriers could be held liable where the loss was caused by the wrong or fault of the shipper."

It is not clear, under the evidence in this case, that the question involved is one purely or wholly of negligence. But if it be viewed as such, it is settled that "if the plaintiff by ordinary care could have avoided the consequences to himself caused by the de-

fendant's negligence, he is not entitled to recover." Civil Code, § 3830. But whether the subject of negligence be involved or not, it is true in all cases that no person can saddle another with the responsibility or liability for the consequences of an act which he himself committed. This general principle is recognized in § 3893 of the Civil Code; and § 2322 expressly declares that "no person shall recover damages from a railroad company for injury to . . his property where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of the default attributable to him."

2. As we view the evidence in the present case, the plaintiff, by showing the delivery of its goods into the possession of the defendant company, for the purpose of transportation, and establishing the fact of loss, might have raised a presumption of liability on the part of the defendant for their value, if the selfsame evidence did not show that the loss was not due to the negligence of the defendant, but to that of the plaintiff itself. The presumption of liability, raised by § 2264 of the Civil Code, when that section is construed with the other sections to which we have referred, may certainly be rebutted, if it appears that the injury was caused by the plaintiff itself, whether the act which caused the injury be due to negligence or design. A carrier, where loss of goods received by it for shipment is shown, is generally liable, unless it is made to appear that the loss was occasioned by the act of God or the public enemies of the State; but certainly a carrier would not be liable if, after entrusting my goods to it for carriage, I myself should set fire to them and destroy them, and the fact should be established. In other words, the provisions of § 2264 of the Civil Code have no reference to a case where the loss is attributable, either in whole or in part, to the act of the shipper himself. The section includes, perhaps, responsibility for the acts of all others than the shipper himself, but must be construed in connection with § 2322. As it was undisputed, in the evidence, that the fire inside the convict car, if any, had been built by the agents or employees of plaintiff county, and that the defendant carrier had no knowledge of its existence, the court did not err in telling the jury that the only issue for their determination was

whether the car was burned by fire from the inside, or by fire from the outside, set out by the shifting engine of the defendant company.

Mr. Hale, in his excellent work on Bailments and Carriers (§81, p. 351), adds these qualifications to the rule that shippers are entitled to recover for the loss of their goods, except where the same is caused by the act of God or the public enemies: (1) where the loss is caused by the act of the shipper; (2) where the public authority intervenes; (3) where the inherent nature of the goods shipped must be taken into consideration. On page 365, the principle to which we have adverted is laid down: "Common carriers are not insurers against losses caused by fraud or fault of the shipper." The statement on page 367, that "a hidden defect in the packing is the act of the shipper, for which the carrier is not responsible," is also applicable to the undisputed facts in this case, in that it appears that the car which was burned was placed upon the flat car by the employees of the county, with all of the windows fastened and doors locked, so that there was no opportunity for the agent of the company to see, nor any reason for him to suspect, that there was fire in the car; nor was any means afforded it to know whether the car was packed with this defect hidden therein, nor was he bound to ascertain that there was any fire in it and likely to destroy it. As the agent of the carrier, he had the right to presume that the shipper's agent and servant would not be guilty of the wrong of requiring the transportation of a shipment which contained within itself the means of its own destruction,—certainly not without at least notifying him to that effect and allowing him to determine whether he was willing to accept for carriage a shipment whose nature was such that the carrier would have the right to decline to accept it for shipment.

3. While a carrier is liable, as an insurer, for the loss of freight which he accepts for carriage, and while generally, he is required to accept for carriage all freight properly packed and delivered to him for the purpose of transportation, still a carrier is not required to accept for shipment any freight which may be tendered. If a carrier knows that an article tendered him for carriage is injurious to the public health, public peace or morals, or is likely to destroy the property of others, or if the property tendered for shipment is in such condition that it can not safely be transported,

he has the right to decline to receive the proposed shipment. The above statement is not exhaustive of all of the cases in which a carrier would be authorized to refuse to accept freight. We mention only some instances, in which it would be not only the right, but the duty, of a common carrier not to endanger persons or property of others.

4. (a) The plaintiff in error insists, in the 6th ground of the motion for new trial, that the court erred in charging the jury as follows: "If the evidence satisfies, if the preponderance of the evidence satisfies you, that the defense set up is true, that is to say, if the goods were destroyed by reason of the fire left in it when it was put into the possession of the company, then I charge you that the company is not liable to Coweta County for damages. The law does not hold the common carrier, in that case, liable." The plaintiff in error insists that this charge was erroneous for three reasons: First, as an expression of opinion on the part of the court. Second, that it was the determination by the court upon the subject of what was negligence. Third, because it eliminated the question of knowledge of the fire on the part of the defendant from the consideration of the jury, and instructed the jury that it was immaterial whether the defendant knew of the existence of the fire in the car or not. There is no merit in the contention that this charge contains an expression of opinion that there was fire left in the car by the plaintiff's agents; because all that the judge said upon that subject relates back to the beginning of the sentence, in which the court says, as a prelude to all that follows: "If the preponderance of the evidence satisfies you." And leaving out the intervening parenthetical sentence, the charge complained of is simply this: "If the evidence satisfies you that the goods were destroyed by reason of the fire left there, then I charge you that the company is not liable," etc. Surely no jury could conceive from this language that the court was expressing an opinion that the fire was left there; especially in view of the fact that the court had just previously told the jury (what affords one of plaintiff's grounds of exception) that the only issue in the case was whether the fire in the stove in the car, or the fire from the outside, caused the destruction of the convict car, and twice, later in the charge, instructed the jury to determine whether there was fire left in the stove or not.

(*b*) As to the complaint that the court's charge amounted to a determination by the court of what facts were necessary to constitute negligence in the case, negligence is in all cases a question of fact to be determined by the jury, and it is axiomatic that an instruction by the court to the jury that any act or acts constitute negligence, unless such have been made negligence by statute, is reversible error. In the present case, however, it was not primarily a question of negligence. The question was whether the act of the plaintiff itself caused the loss. It might be shown that the act of the plaintiff which caused the loss, if an act of the plaintiff did cause the loss, was due to negligence and not to design; but if the jury were satisfied that, after all, the fire which caused the damage to the convict car was made by the shipper himself, it would be immaterial whether it was made for the purpose of burning the goods, or carelessly left by the shipper himself, without the knowledge of the carrier, where it would probably have that effect.

(*c*) The third exception to the charge contained in the 6th ground of the motion for new trial is that it failed to instruct the jury that the plaintiff might recover if the defendant knew or might have known of the existence of the fire in the car. The charge of the court might have been subject to this objection, if the excerpt quoted above had been all that was said by the court upon the subject. But such is not the case. In several portions of the charge the court called the attention of the jury to the fact that if the railway accepted the car with knowledge of the fact that there was fire therein, it would not be relieved from liability. The court also charged the jury that the company was bound to exercise extraordinary diligence; and on the other hand, as to the plaintiff, the court charged as follows: "The absence of such diligence is termed slight neglect. The county would be entitled to recover in that event, provided the company has not shown some legal defense, some legal reason why the plaintiff, in that state of facts, is not entitled to recover."

The plaintiff in error insists, in the 8th ground of the motion for new trial, that the effect of the court's charge therein complained of was to instruct the jury that if the county left in the stove the fire which caused the burning of the car, such conduct on the part of the county would be negligence, and that if they

found that the fire could not have been communicated to the convict car from the outside, they should find for the defendant. The general complaint in this ground of the motion is that the court did not leave it for the jury (if the jury found as a matter of fact that the fire was caused by the act of the plaintiff or its servants) to say whether this act would or would not be negligence, or, if negligence, did not allow the jury to pass upon the question as to whether, as contributory negligence, it should entirely defeat the plaintiff's right to recover. There is no merit in any of these exceptions, for the reason that there is no evidence that the defendant or its agent either knew or could have known, when it accepted the car for carriage and secured it to its flat car, that there was fire in the car. The jury were instructed that if the fire was caused by the defendant or any of its agencies, the company would be liable; and very properly instructed, on the other hand, that if the jury found that the fire was caused by the county itself, through some of its agents, the defendant company should not be held liable. If the jury found the latter to be true, and found that the defendant had no knowledge of the fact that there was fire in the car, the question of negligence was wholly immaterial. While it may be true, as insisted by counsel for plaintiff in error, that it is not, as a matter of law, negligent to leave fire in a car, we know of no rule of law which requires a carrier to transport, as freight, articles containing fire. On the contrary, we hold that it would have been the duty of the carrier (as it was the duty of the shipper, upon delivering the shipment, to put it in a condition to be shipped) to reject a shipment with fire in it, and not to receive it until all fire was extinguished. All of the complaints of the judge's charge overlook the fact that it is the duty of the shipper to deliver the shipment in such condition as that it can be safely transported. To deliver for shipment freight in which fire is concealed might or might not be a fraud on the part of the shipper, but in any event it must be held to be such a fault on the part of the shipper or such a defect in the packing or preparation on the part of the shipper, as carriers are not required to insure against. "The liability of common carriers is an extraordinary one, and does not depend upon the question of negligence or no negligence. . . They are in effect insurers, . . and according to the old common-law rule can escape liability only" when "the loss was caused

by the act of God, or by the act of the public enemy. The modern rule is more liberal, for to the old common-law rule . . have been added . . acts of public authorities, and loss or injury attributable to the inherent nature of the goods. It is sometimes said that another ground has been added by the modern law, namely that arising from the acts of the shipper, but we think there never was a time when the carrier could be held liable where the loss was caused by the wrong or fault of the shipper." 4 Elliott on Railroads (ed. 1897), §1454, p. 2262. We agree with the conclusion of this text-writer, because there has never been a time or a case among English-speaking people in which the principle was not recognized that one could not take advantage of his own wrong. Where a shipper wrongfully requires the transportation of an article which is in a condition unfit to be shipped, his wrong is a proximate cause of the injury, and the carrier is, therefore, not liable. This court adheres to a strict construction of §2264 of the Civil Code. In all cases where goods have been delivered to a carrier for transportation and where the loss is in no wise attributable to the act of the shipper himself, the rule should not be relaxed. A carrier may be liable in spite of the most extraordinary diligence. In *Ga. So. & Fla. R. Co.* v. *Barfield,* 1 *Ga. App.* 203 (58 S. E. 236), we held that "No injury can be said to be the act of God which can, under any fair view, be attributed to the negligence of man." But if one, either before or after shipment, directly or indirectly, intentionally or unintentionally, injures or destroys his own property, he can not make another pay for it.

5, 6. The verdict for the defendant was demanded by the evidence, and the assignments of error contained in the remaining grounds of the motion for new trial do not require more than a brief mention. The first and second grounds of the amendment to the motion complain of the exclusion by the court of the following testimony of the witness S. S. Nash: "I told Tom to look after the fire" (this witness having testified that he sent into the car this Tom, a negro convict, and "told Tom to look after the fire"). The plaintiff wished to show the diligence of its superintendent in protecting the property, and, upon this ground, insisted that the evidence be not excluded. Even if this evidence was competent, it was immaterial, because it did not matter what directions the

superintendent had given Tom. The vital question was not whether he told Tom to put out the fire, but whether Tom did it.

. The court also refused to allow Mr. Nash to testify that he directed one of his servants to see that all the fire in the stove was extinguished. This testimony was likewise irrelevant, for the reasons just above stated, and was properly repelled.

If the court erred in admitting the shipping orders, which were drawn up coincidently with the bill of lading, and which, like the bill of lading, were unsigned, the error was corrected by the court in the conclusion of his charge, by an explicit instruction to the jury that the plaintiff was not bound by any of the stipulations in the paper, unless it was signed. As it was undisputed that neither the bill of lading nor the shipping order was signed, this effectually withdrew that testimony from the jury; and the shipping order does not appear in the brief of evidence in the record. It appears that when the plaintiff's counsel objected to the introduction of the shipping orders (which were really issued contemporaneously and as a part of the bill of lading, the shipping order being signed by the shipper and the bill of lading by the carrier, and the bill of lading having been produced in response to a notice to produce, served by the plaintiff upon the defendant) the judge reserved the decision upon the point; he made no ruling thereon during the trial; and it may, therefore, be considered to have been admitted over the plaintiff's objection. But "evidence, whether objected to or not, can be as effectually withdrawn by the charge of the court as by a ruling to that effect during the course of the trial." In a case where, as in the present instance, it was the last instruction to the jury before they retired to consider their verdict, the withdrawal of the evidence in the charge would be more likely to be remembered by the jury than an earlier ruling upon the subject.

The concluding ground of the motion excepts to the charge of the court as a whole, as being confusing and for failing to cover the issues made in the case. We think the charge of the court was clear and easy to be understood, and that the only issues involved were fully and clearly presented. There may be some minor verbal inaccuracies to be detected by a microscopic, grammatical analysis, but these do not afford any legal ground for reversing the judgment refusing a new trial.

*Judgment affirmed. Powell, J., disqualified.*