No. 3279

Second Circuit

———

NOEL BROS. v. TEXAS & PAC. RY. CO.

———

(April 9, 1931. Opinion and Decree.)
(May 20, 1931. Rehearing Refused.)
(June 22, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

———

Foster, Hall, Barret & Smith, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

DREW, J. Noel Bros., a partnership, sued the Texas & Pacific Railway Company for the sum of $1,083.30, with legal interest from August 28, 1925, claiming that on or about August 28, 1925, petitioner loaded thirty-three bales of cotton in defendant company's car No. 13162, at Gilliam, La., for transportation to Shreveport to be delivered to A. J. Ingersoll & Co.; that nine bales of the thirty-three were burned in said car while the car was on a spur track of the company in Gilliam; that the bill of lading, or contract, between the parties contained the provision that "the carrier or party in possession of any of the property herein described shall be liable as by common law for any loss thereof or damage thereto, except as hereinafter provided"; and that by said agreement the defendant bound itself as liable as at common law; that demand was made for payment of the claim, and that same was refused.

Defendant denied the allegations of the petition generally, and set up that the fire which destroyed the nine bales of cotton originated in the shipper's gin house and spread to the car containing the shipment of cotton, that defendant was in no way responsible for the origin of the fire, and that the spreading of the fire into the car containing the cotton was an act for which the defendant was not liable.

The case was tried on an agreed statement of facts, which is as follows:

"The plaintiff and defendant, represented herein by their respective attorneys, agree on the following statement of facts to be used in the trial of the above numbered cause:

"1. It is agreed that the defendant is a common carrier of goods for hire.

"2. It is agreed that the cotton destroyed by fire in T. & P. Car No. 13,162 on August 28, 1925, in the town of Gilliam, was owned by the plaintiffs.

"3. It is agreed that on August 28, 1925, the plaintiff loaded thirty-three bales of cotton in the above numbered car on the morning of said date, and that the car containing said cotton was on the private spur track of the plaintiff at Gilliam, Louisiana.

"4. It is agreed that billing instructions had been issued to the railway company's agent by the shipper consigning the cotton to A. J. Ingersoll & Company at Shreveport.

"5. It is agreed that bill of lading covering said shipment had been signed by the agent of the railway company at Gilliam but had not been signed by the shipper.

"6. It is agreed that after the said cotton had been so loaded, on the same day at about 11:30 in the morning, a fire broke out in the gin house of Noel Brothers and spread rapidly to the car containing the cotton consuming the gin house and also destroying nine bales of the said thirty-three bales loaded in T. & P. car 13,162, and that the defendant could not have moved said car out of the pathway of said fire before same ignited.

"7. It is agreed that said fire originated from an unknown cause.

"8. It is agreed that no freight train passed the track on which the car was standing between the time when the loading of the cotton had been completed and issuance of the bill of lading requested, and the time when the fire broke out.

"9. It is admitted that said nine bales of cotton were of the gross weight of 4710 pounds; that said cotton was a part of a two hundred bale shipment sold A. J. Ingersoll & Company at Shreveport at the price of 23c per pound, making a total value of said cotton destroyed of $1,083.30.

"10. It is agreed that in interpreting the common law the courts may consult

decisions of common law states and jurisprudence of the United States courts and recognized works by text writers as to liability of a common carrier at common law.

"Signed at Shreveport, Louisiana, on this 1st day of December, 1927."

The lower court rendered judgment in favor of plaintiff, and the defendant prosecutes this appeal.

It is admitted, and there can be no doubt, that, if the common-law rule is applicable, defendant is liable. However, this shipment was an intrastate shipment from Gilliam, La., to Shreveport, La., and the common law does not apply. The case will have to be decided upon the law of Louisiana applicable to such a case. The last expression of the Supreme Court in this state upon this subject is in the case of Dejean v. Louisiana Western R. Co., 167 La. 111, 118 So. 822, 823, a case similar in many respects to the one before us.

In that case plaintiff sued for the value of twenty-five bales of cotton purchased by him from the Rayne Cotton Gin Company and destroyed by fire while loaded in a car of the defendant company on a spur track near the plant of the gin company at Rayne, La. At the time of the fire, the cotton had been consigned to order of Rayne Cotton Gin Company, notify Armand L. Dejean, Opelousas, La. Plaintiff alleged that the loss of the cotton was occasioned solely from the gross negligence of defendant company, and was in no way due to his fault. Defendant denied any negligence on its part, and averred that the fire that burned the cotton had its origin in the gin of the Rayne Cotton Gin Company, and that the destruction of the cotton was brought about by "such accidental and uncontrollable event."

It specially averred in its answer:

"That said cotton, no doubt, caught fire from either a match or a small piece of steel or other metal when the cotton was ginned, causing a spark to develop which was smothered when the bale was packed, and, afterwards burned its way out from the inside of the bale or bales, after said bales were placed in the car; or from a spark from the fire in the gin for which your defendant was not responsible."

The court said:

"The liability of defendant company for the cotton received for shipment is fixed by article 2754 of the Civil Code, which reads as follows:

"'Carriers and waterman are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events.'"

The court in interpreting the words "accidental and uncontrollable events," as used in this article of the Civil Code, said:

"They are the equivalents of 'cas fortuit' and 'force majeure' of the French text. The 'cas fortuit' or 'fortuitous event' is defined as—

"'That which happens by a cause which we cannot resist.' R. C. C. art. 3556(15).

"'Those accidents are said to be caused by superior force ("force majeure") which human prudence can neither foresee nor prevent.' R. C. C. art. 3556(14).

"'The term "vis major" (superior force) is used in the civil law in the same way that the words, "act of God," are used in the common law, and so also is the term "casus fortuitus."

"'By the act of God is meant inevitable accident or casualty.' Brousseau & Co. v. Ship Hudson, 11 La. Ann. 427.

"In the Brousseau & Co. case, the court quoted the following extract from Story on Bailments:

"'By "inevitable accident" is meant any accident produced by any physical cause, which is irresistible; such as a loss by lightning or storms, by the perils of the seas, by an inundation, or earthquake, or by sudden death or illness. By "irresistible force" is meant, such an interposition of human agency, as is, from its nature and power, absolutely uncontrollable.'

"In Eugster & Co. v. West & Co., 35 La. Ann. 121, 48 Am. Rep. 232, the court said:

" 'The Pandectes Francaises teach that on entend par cas fortuits les accidens qu'on n'a pu ni prevoir ni empecher. So Emerigon on Insurances, 285, by accident ("cas fortuit") is meant a superior force which cannot be foreseen nor resisted. In its legal sense, "fortuitous event" is synonymous with "act of God" of the common law.'

" 'The carrier must prove the precise cause of the loss. It will not suffice to prove merely due diligence, but the carrier must prove, moreover, that the accident was occasioned by a fortuitous event, or by irresistible force, or by a defect of the thing itself, or by a fault of the shipper. Fuzier-Herman, Code Civil, vol. 4, p. 419, No. 1. * * *

" 'In the civil law loss by fire is not considered a fortuitous event, as it arises almost invariably from some act of man.' Lehman, Stern & Co. v. Morgan's La. & Texas R. & S. S. Co., 115 La., pages 8 and 9, 38 So. 875, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann. Cas. 818."

And held that the accident in that case was not occasioned by a fortuitous event nor by irresistible force, and that the defendant railway company was liable, even though it had exercised due diligence in inspecting the shipment when received and in sealing the car at the time.

It is clear from this decision that the burden of proof was on defendant to prove the precise cause of the loss, and that the accident was caused by a "fortuitous event" or by "irresistible force" or by defect of the thing itself or by a fault of the shipper, and it is not enough to prove want of negligence on its part. In this respect, the defendant has failed. The statement of facts agreed upon shows that the fire originated from an unknown cause, and that the cotton was destroyed by the said fire which has been held not to be a fortuitous event, as it arises almost invariably from some act of man.

As the accident in this case was not caused by a fortuitous event nor by irresistible force, defendant must be held to be liable. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.

McGREGOR, J. (dissenting). This case, involving principles so vital in our system of law, is of such great importance, and the opinion and decree handed down by the majority of the court, in my humble judgment, is so contrary to the spirit of the law, and will work such injustice on the defendant, I feel justified in giving my reasons for dissenting.

As stated in the opinion, the case was tried on an agreed statement of facts, which is copied therein. In my judgment, paragraphs 6, 7, and 8 of this statement absolutely relieve the defendant from all negligence and liability. Plaintiff bases its demand on a provision in the bill of lading to the effect that the defendant should be liable according to the common law for any losses or damages that might be incurred. The lower court held that the rules of the common law could not govern an intrastate shipment such as this was, and the opinion just handed down correctly sustains this view. But the lower court held that even under our law the defendant was liable, and rendered judgment accordingly. The opinion of the majority upholds this view. It is from the affirmation of this judgment that I dissent.

Under the common law a carrier is practically an insurer. The rule has been stated as follows:

Section 129, 10 Corpus Juris:

"The general rule as to the common carrier's liability with reference to the goods in his possession as carrier, and regardless of any contractual exceptions, is that he is liable for all loss or destruction of or injury to such goods, not occasioned by the act of God or of the public enemy."

4 R. C. L., sec. 175, p. 696:

"At common law, it has been long settled that a common carrier is responsible for the safe transportation and delivery of goods received by him for carriage, and can justify or excuse a default only when occasioned by the act of God or the public enemy."

In the development of the rule as stated, it has been held that the carrier is not liable for loss or damage "due to the intrinsic qualities of the goods carried or the act or fault of the shipper," so that the complete common-law rule has been stated as follows:

10 Corpus Juris, sec. 129:

"* * * The common carrier is liable for all loss or injury not due to the act of God or the public enemy, the inherent nature or qualities of the goods, or the act or fault of the owner or shipper, it being understood that as to all of these excepted cases the carrier may be liable by reason of his own negligence or that of his agents, servants, or employees."

Elliott on Railroads, sec. 1454, p. 2263:

"The modern rule is more liberal, for, to the old common law grounds which will exonerate the carrier from liability have been added the following, namely, acts of the public authorities, and loss or injury attributable to the inherent nature of the goods. It is sometimes said that another ground has been added by the modern law, namely, that arising from the acts of the shipper, but we think there never was a time when the carrier could be held liable where the loss was caused by the wrong or fault of the shipper."

5 Thompson on Negligence, sec. 6464:

"The old common law doctrine made no exception in the case where the act of the shipper contributed to the loss. In the growth of the law on the subject, this want of equity in the older view was recognized and corrected, and now the investigation will include within its scope the question whether the shipper himself was free from fault in the matter. The courts take cognizance of the fact that the shipper himself has duties to perform with reference to the subject of the shipment, and that he should not be allowed to profit by his own default."

Hutchinson on Carriers, sec. 265:

"The liability of the common carrier by law is, as has been seen, an unusual and extraordinary one, based upon considerations of public policy which have survived the wonderful change in the circumstances under which they first arose. By that law the common carrier is regarded as a practical insurer of the goods against all losses of whatever kind with the exception of (1) those arising from what is known as the act of God, and (2) those caused by the public enemy; to which in modern times have been added (3) those arising from the act of the public authority, (4) those arising from the act of the shipper, and (5) those arising from the inherent nature of the goods."

So that, even though in the beginning under the common law it was held that a carrier was liable in every case except where the loss or damage was caused by an act of God or the public enemy, it was soon found that two additional exceptions had to be added in order to avoid doing grave injustice to the carrier, viz.: (1) When the loss or damage is due to the inherent nature or qualities of the goods; and (2) when it is due to the act or fault of the owner or shipper. The rule in Louisiana is expressed in the Revised Civil Code, art. 2754, which reads as follows:

"Carriers and watermen are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

Nothing is said in this article about cases where the loss or damage is due to the inherent nature of the goods or to the act or fault of the owner or shipper. But in the very nature of things our law does make those exceptions just as the common law has done.

It must be conceded that, regardless of what is meant by "accidental and uncontrollable events" in Revised Civil Code, art. 2754, our law does not go as far as the common law does in holding the carrier liable as an insurer. A clear and concise statement of our law is found in the case of Lehman, Stern & Co. v. Morgan's La. & Tex. R. & S. S. Co., 115 La. 2, 38 So. 873, 876, 70 L. R. A. 565, 112 Am. St. Rep. 259, 5 Ann. Cas. 818:

"At common law the carrier is considered as in the nature of an insurer against loss by fire, unless it be caused by lightning. Hutchinson on Carriers, 182. The civil law does not go to this extent, but it does require the carrier to prove the precise cause of the fire, that it was impossible for human prudence to foresee or prevent the loss, and that no act of imprudence or negligence is chargeable to the carrier."

The majority opinion handed down herein rests solely and strictly on the case of Dejean v. La. Western R. Co., 167 La. 111, 118 So. 822, which is the latest expression of the Supreme Court of Louisiana on this subject. This Dejean case cites and is based largely on the Lehman, Stern & Co. case. I do not believe that the writers of these two opinions intended for them to be used as authority in a case like the one under consideration, for it is not parallel with either one of them. In the Lehman, Stern & Co. case the cause or origin of the fire was unknown and unexplained, but it broke out in the cotton itself while it was in the possession of the carrier on its premises. Under that state of facts, whether it be decided according to the common-law rule or our Revised Civil Code, article 2754, the carrier should be held liable, just as was done. In the Dejean case the fire originated and suddenly broke out in the midst of the cotton itself while it was in the possession of the carrier on its premises. The cause or origin was un-

known and unexplained. The defense urged was:

"That said cotton, no doubt, caught fire from either a match or a small piece of steel or other metal when the cotton was ginned, causing a spark to develop which was smothered when the bale was packed, and, afterwards burned its way out from the inside of the bale or bales, after said bales were placed in the car; or from a spark from the fire in the gin for which your defendant was not responsible."

It was impossible for the carrier in that case to prove its defense. It was a mere theory or supposition without any testimony to support it. Certainly, under all the rules of interpretation, the carrier could not escape liability by simply suggesting a possible cause or origin of the fire. The plaintiff could just as easily have alleged that the fire no doubt was caused by a match or matches left on the floor of the car and ignited by friction when the bales of cotton came in contact with them in being loaded. In neither of these cases did the defendant carrier show that the cause or origin of the fire was on the premises of the owner or shipper, and that the loss or damage was the result of an act attributable to the owner or shipper himself. But, suppose it had been proved that in those cases the bales of cotton were really on fire when they were delivered to the carrier, and that the carrier did not know it and could not have known it. This is possible, and does happen sometimes. Can it be doubted that the carrier would have been relieved of liability from the loss or damage caused by such a fire? In order to free itself from liability in case of fire, the carrier must prove certain things. In the Lehman, Stern & Co. case, the court said:

"The carrier must prove the precise cause of the loss. It will not suffice to prove merely due diligence, but the carrier must prove, moreover, that the accident

was occasioned by a fortuitous event, or by irresistible force, or by a defect of the thing itself, or by a fault of the shipper. Fuzier-Herman, Code Civil, vol. 4, p. 419, No. 1."

In the case at bar, the defendant has proved "the precise cause of the loss." It was a fire which originated on the premises of the plaintiff. Whatever explanation of the fire that is made must be made by the plaintiff, if at all. Surely there is no rule or law of equity that would require the defendant in this case to account for the fire. So far as it is concerned, it was just as "accidental and uncontrollable" as if it had been caused by lightning. It came from premises not under its control but under the control and ownership of the plaintiff.

The fundamental reason for the common-law rule is clearly set forth in 4 R. C. L. sec. 176. The same line of reasoning that fixes liability under the common law on the carrier because of the impossibility of the shipper discovering the cause or origin of the loss should relieve it of this liability under the civil law when the cause or origin of the event causing the loss or damage is upon the premises of the shipper and beyond the reach or control of the carrier, where it has no right to go to investigate or to put into effect any preventive measures. In the very nature of things, if the fire that caused the loss or damage originated or sprang from the private premises of the shipper, the carrier cannot be held to be responsible in the least degree, and whatever of negligence and liability must be imputed to the shipper or owner of the premises. It is impossible for the carrier in such a case to explain the fire while all the knowledge or information that can exist concerning its cause or origin must of necessity be in the possession of the shipper, if of any one, and may be concealed by him. In such a case, in my judgment, a carrier has as completely freed itself from liability by showing that the cause of the loss or damage originated on the premises owned and controlled by the shipper as it does by showing that the cause was "accidental and uncontrollable" when it originated in the goods while in its possession. It would violate all rules of equity and justice to require the carrier to explain that which, if explained at all, can be explained only by the shipper, particularly when the event or happening requiring explanation originated wholly on the premises of the shipper. There are numerous authorities to support this view.

American Lead Pencil Co. v. Nashville, C. & St. L. Ry., 124 Tenn. 57, 134 S. W. 613, 617, 32 L. R. A. (N. S.) 323:

"Even in cases where the relationship of common carrier does exist, the common carrier is not liable, where the loss is caused by the shipper's act, whether that act be one of negligence, or misadventure, or misfortune."

Hart v. Chicago & N. W. Ry. Co., 69 Iowa, 485, 29 N. W. 597, 598:

"If the immediate cause of the loss was the act of the owner, as between the parties, absolute justice demands that the loss should fall upon him, rather than upon the one who has been guilty of no wrong, and it can make no difference that the act cannot be said to be either wrongful or negligent. If, then, the fire which occasioned the loss in question was ignited by the lantern which plaintiff's servant, by his direction, took into the car, and which, at the time, was in the exclusive control and care of the servant, defendant is not liable, and the question whether the servant handled it carefully or otherwise is not material. This view is abundantly sustained by the authorities. See Hutch. Carr. sec. 216, and cases cited in the note; also Lawson, Carr. secs. 19, 23."

Coweta County v. Central of Ga. Ry. Co., 4 Ga. App. 94, 60 S. E. 1018, 1021:

"A carrier, where loss of goods received by it for shipment is shown, is generally liable, unless it is made to appear that the loss was occasioned by the act of God or the public enemies of the state, but certainly a carrier would not be liable, if, after intrusting my goods to it for carriage, I myself should set fire to them and destroy them, and the fact can be established. * * *

"To deliver for shipment freight in which fire is concealed might or might not be a fraud on the part of the shipper, but in any event, it must be held to be such a fault on the part of the shipper or such a defect in the packing or preparation on the part of the shipper, as carriers are not required to insure against. * * *

"In all cases where goods have been delivered to a carrier for transportation, and, where the loss is in no wise attributable to the act of the shipper himself, the rule should not be relaxed. A carrier may be liable in spite of the most extraordinary diligence. In Ga. So. & Fla. Ry. Co. v. Barfield, 1 Ga. App. 203, 58 S. E. 236, we held that 'no injury can be said to be the act of God which can, under any fair view, be attributed to the negligence of men.' But where one, either before or after shipment, directly or indirectly, intentionally or unintentionally, injures or destroys his own property, he cannot make another pay for it."

In the case at bar, the loss or damage was caused by an event which could not in the remotest degree be attributed to the negligence or fault of the carrier. If there was unexplained negligence, it must be imputed to the shipper, the only one who might have the power of explanation. I consider it almost unconscionable to hold the carrier liable in such case. If it becomes established in our jurisprudence that a carrier is liable for the destruction of cotton by fire after it has been loaded into the carrier's car but is still on the private tracks of the shipper, and the fire originates wholly within the gin house owned, controlled, and operated by the shipper, the flood gates of fraud on the part of shippers will be opened wide, and the results might be disastrous. In a case of this kind, the carrier is just as helpless and powerless as the shipper is when the goods are lost or damaged from cause originating out of his presence or control and entirely off his premises. The situation which developed the rigorous rule against the carrier is entirely reversed, and by the same process of reasoning the carrier must be relieved of liability.

In the agreed statement of facts, it is stipulated that the fire which destroyed the cotton "broke out in the gin house of Noel Brothers and spread rapidly to the car containing the cotton, consuming the gin and also destroying nine bales of the said thirty-three bales loaded in f. & P. car #13162, and that the defendant could not have moved said car out of the pathway of said fire before same ignited." This states the "precise cause of the loss" to have been a fire originating on the premises of the shipper. As between the shipper and the carrier, the fault was that of the shipper. So I hold that, under the express terms of the law as stated in the Lehman, Stern & Co. case, the defendant is not liable. Everything that the court said in that case that the carrier should prove has been admitted. If the defendant is liable in this case, then from the standpoint of the plaintiff it is a great misfortune that it had not loaded into the cars of defendant all the cotton on the gin house premises, as well as all the immovable property that could be loaded into cars. It would have received free insurance on all its property.

For these reasons, I most respectfully dissent from the opinion of the majority.