27723. FOUNTAIN *v.* LOUISVILLE & NASHVILLE RAILROAD CO.

DECIDED NOVEMBER 30, 1939.

*Roscoe Pickett,* for plaintiff.

*E. M. McCanless, Tye, Thomson & Tye,* for defendant.

MACINTYRE, J. This suit was instituted in a justice's court and was based on a summons which, as amended, read in part as follows: "Defendant company killed one dog, 11 months old, color yellow, the property of plaintiff, and of the value of $49.50, by wilfully and maliciously causing and suffering one of its locomotives to collide

with said dog on their road. . . Plaintiff's dog came on defendant's track about 600 feet in front of said locomotive near Wheeler's Public Crossing . . in full view of the engineer in charge of said locomotive . . and said engineer immediately and with intent to kill said dog increased the speed of said train, and did wilfully, wantonly, and maliciously and unlawfully run down said dog and kill him." The defendant's demurrer was overruled. Judgment resulted in favor of the plaintiff. The defendant appealed to a jury in the justice's court. The trial resulted in a verdict and judgment in favor of the plaintiff. The defendant's certiorari was sustained and judgment was rendered against the plaintiff for costs. The plaintiff excepted. The defendant contends that the evidence failed to substantiate the allegations of the petition that the engineer "immediately and with intent to kill said dog increased the speed of said train, and did wilfully, wantonly, and maliciously and unlawfully run down said dog and kill him." The plaintiff contends that the evidence authorized the verdict of the jury and that the judge erred in sustaining the certiorari.

Code, § 24-1102, declares: "All suits before justices of the peace shall be commenced by written summons, which shall be issued and signed by the justice of the peace of the district in which the suit is brought, and shall be directed to any lawful constable of the county in which the suit is commenced, commanding the defendant to appear at the time and place of trial, which time and place shall be specified in said summons, and such justice of the peace shall attach a copy of the note, account, or cause of action sued on, to said summons at the time the same is issued." However, Code, § 81-114, declares: "No technical or formal objections shall invalidate any petition; but if the same shall substantially conform to the requirements of this Code, and the defendant has had notice of the pendency of the cause, all other objections shall be disregarded, provided a legal cause of action as required by this Code is set forth." The summons in a justice's court need not state the cause of action with the particularity required in regular pleading in courts of record, for "In a justice court, local government is realized in its last analysis. This tribunal is our primary—most rudimentary organ of home rule. It is the ne plus ultra of judicial simplicity. An action in it is not by petition or declaration, but by summons; and the summons may be a very scanty document."

*Atlanta & West Point R.* v. *Hudson,* 62 *Ga.* 679, 682. *South Georgia Ry. Co.* v. *Atkins,* 13 *Ga. App.* 416 (79 S. E. 226); *Georgia Southern & Florida Ry. Co.* v. *Barfield,* 1 *Ga. App.* 203 (58 S. E. 236); *Howell* v. *Field,* 70 *Ga.* 592; *Atlantic Coast Line R. Co.* v. *Lane,* 9 *Ga. App.* 524 (71 S. E. 918).

With reference to courts of record it has been held: "With respect to what averments are necessary to be proved, I take the rule to be, that if the whole of an averment may be struck out without destroying the plaintiff's right of action, it is not necessary to prove it; but otherwise, if the whole can not be struck out without getting rid of a part essential to the cause of action; for then though the averment be more particular than it need have been, the whole must be proved or the plaintiff can not recover." Williamson *v.* Allison, 2 East. 452, 102 English Reports, Full Reprint, 441. In Panton *v.* Holland, (N. Y.) 17 Johnson's Reports 92 (8 Am. D. 369), it was held: "Where the plaintiff, in a special action on the case, declares that the defendant, *contriving, and maliciously intending,* to injure and aggrieve the plaintiff, dug up the soil of a contiguous lot, whereby the foundation walls of the plaintiff's house were injured, evidence of negligence on the part of the defendant, will support the declaration; the allegation of malice being immaterial; as it may be struck out as surplusage, and there still be left a good cause of action." The Supreme Court of Iowa, in McCord *v.* High, 24 Iowa, 336, 347, said: "If the defendant is liable for negligent and careless acts, recovery may be had against him upon the petition charging the acts to have been wilful and malicious without proof of malice. This was the rule under the old system of pleading, which was more strict in its requirements that the proof should correspond with the allegations of the declaration, than is our present system. It is held, that the allegations of malice and wilfulness may be disregarded as surplusage and proof given of negligence and carelessness."

Certainly a plaintiff in a justice's court can not be held to a stricter rule than a plaintiff in a court of record. Under the rule just announced for courts of record, after striking as surplusage the averment "with intent to kill said dog . . and did wilfully, wantonly, and maliciously, . ." a right of action would still remain, for where a suit is instituted in a justice's court against a railroad company for the killing of a dog, there need be no petition

alleging intentional, wilful, malicious, and wanton killing of a dog, which is personal property, for a railroad company owes the owners of dogs the duty to exercise ordinary care both in discovering the dogs upon their track and in avoiding their injury. *Powell v. Nelson*, 52 *Ga. App.* 351, 353 (183 S. E. 348). In the present case the summons as amended notified the defendant of the time, place, and manner of killing the dog, the kind of dog, its value, that the defendant was indebted to the plaintiff in the sum of $49.50 for "unlawfully" (wrongfully) killing said dog, and that the plaintiff had owned the dog. Under these circumstances the purpose of the above section (Code, § 24-1102) was substantially complied with.

It appeared from the testimony of Virgil Fountain, the plaintiff, that he had a dog killed by the defendant's train near Wheeler's Crossing on May 13, 1936; that it had a market value of $50; that he was about 200 yards from it when it was killed; that the train was running slow when it came in sight of the dog, and that "they took out after it and run it about 200 feet before they overtook it and killed it as its head went over the rail. It just got over." He was asked the question: "Did the speed of the train increase?" He answered: "Yes, sir, as fast as I ever saw it coming down." On cross-examination the plaintiff testified that "he saw the dog going up the track and saw the train coming down; the dog ran about 100 feet and saw the train coming and turned around and went back, about 200 feet he guessed. . . It made no effort to get off the track until it started off and they cut it in two; . . that its body was on the inside and its head on the outside of the rail." The engineer of the train testified that he was in charge of the train which allegedly ran over the dog; that he had no knowledge of any dog being killed and did not remember having seen a dog on that day; that the train usually runs about 20 or 25 miles per hour at the place in question; that it was his duty to look ahead and he was looking ahead, and couldn't see the dog because there wasn't a dog there; that he didn't remember whether he blew the whistle for the crossing or not. The fireman also testified that he had no recollection of any dog being killed on the date in question; that he was looking ahead as was his duty and didn't see any dog; that he rang the bell at the crossing and that the engineer blew the whistle and that the train was running 15 or 20 miles per hour, no faster.

Under the foregoing rulings and under the evidence presented the verdict of the jury in the justice's court was authorized by the evidence, and the judge of the superior court erred in sustaining the certiorari.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*