STANDARD PICKLE CO. *v.* PERE MARQUETTE RAILWAY CO.

1. APPEAL AND ERROR—FINDINGS OF COURT SUSTAINED UNLESS CONTRARY TO EVIDENCE.

In reviewing a case tried by the court without a jury, the findings of the trial judge must be sustained unless they are contrary to the clear weight of the evidence.

2. CARRIERS—NEGLIGENCE—PROXIMATE CAUSE.

Where a shipper of pickles shipping at its own risk failed to take proper precautions against frost and they were frozen in transit, in an action against the carrier it is liable only if its negligence was the proximate cause.

3. SAME—DELAY OF CARRIER.

Where the pickles were subjected to destructive temperatures before there was any unreasonable delay, it cannot be said that the negligence of the carrier was the proximate cause of the freezing.

4. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Where there was no evidence that defendant had available storage other than its roundhouses, and no evidence of the number or quantity of perishable shipments in transit and delayed, a finding of negligence for failure to put the cars into the roundhouses cannot be sustained.

5. SAME—DUTY REQUIRED OF CARRIER.

The carrier should not be required to take precautions with goods which the owner himself deemed it unnecessary or undesirable to take.

6. SAME—NEGLIGENCE—PROXIMATE CAUSE.

When notice of the delay and of the freezing condition of the weather would have availed nothing, failure of the carrier to give such notice to the shipper may not be said to be negligence.

7. SAME—WEIGHT OF EVIDENCE.

Where the clear weight of the evidence supports a finding that the defendants were not liable for the freezing, a judgment should have been entered for them.

As to provision exempting carrier from liability for loss by frost as extending to loss caused by negligence, see note in 6 B. R. C. 130.

Error to Montcalm; Davis (Frank D. M.), J. Submitted January 9, 1923. (Docket No. 11.) Decided April 27, 1923.

Case by the Standard Pickle Company against the Pere Marquette Railway Company and another for damage to goods in transit. Judgment for plaintiff. Defendants bring error. Reversed, and no new trial ordered.

*Norris, McPherson, Harrington & Waer,* for appellants.

*Francis L. Williams,* for appellee.

CLARK, J. Lakeview, Montcalm County, Michigan, is a village on a line of the Pere Marquette Railway Co. In the late fall or early winter of 1917 perishable shipments were moved from that point principally in box cars, the company being able to supply refrigerator cars for less than one-third of such shipments. No discrimination in the service is claimed or shown. The local agent was supplied with a rubber stamp and directed to place upon the bill of lading, in case a box car was used for perishable shipment and when such car was not insulated by lining throughout with paper, the following:

"To be forwarded in an ordinary box car entirely at the owner's risk of damage by weather conditions."

The agent testified:

"This was in accordance with instructions which we receive each year in the fall about the time of the first freeze to place that stamp on all perishable freight loaded in common box cars which the shipper does not protect on the inside by insulating the car. These two cars were not insulated by the shipper and no false bottoms were built for the cars. The cars

were not protected by lining the car throughout with paper, no stove was placed in them and no man accompanied the shipments."

A shipper applied to the local agent for two refrigerator cars for shipping pickles in barrels to the plaintiff at Hartford, Conn.   The cars were not furnished.   After waiting about two weeks the shipper selected the best two box cars in the yard, into which he loaded the pickles.   The pickles were in brine of strength to withstand a temperature of 10 or 12 degrees Fahrenheit.   No precaution against frost was taken except that some planks were laid on the floor of the cars, and the crevices about the doors were filled with paper.   The bills of lading were stamped as indicated. The cars were received by the carrier on December 5th and December 8, 1917, respectively.

The agent routed the first car, 189015, via P. M. Ry. to Black Rock, D. L. & W. Ry., etc., the second car, 9668, via P. M. Ry. to Suspension Bridge, N. Y. C. Ry., etc.   The cars moved into Canada without unreasonable delay.   They were held at or near St. Thomas for 4 or 5 days because of a snow storm which tied up traffic on defendants' lines and on eastern lines.   The storm was accompanied by low temperatures.   After being released they moved eastward and finally reached destination, having consumed in transit 32 and 41 days respectively.

The pickles at destination were found to be frozen "solid, and we couldn't get them out without chopping them out," and worthless.   In the record is a schedule of temperatures to which they were subjected en route.   There is also a schedule of temperatures to which they would have been subjected had they moved on ordinary and usual running time.   We quote from brief of counsel schedule of minimum temperatures:

"Car No. 9668.   December 9.   Car was at Ply-

mouth; temperature was 8. Car should have been at Plymouth; temperature was 8. December 10. Car was at Windsor; temperature was 1. Car should have been at Windsor; temperature was 1. December 11. Car was at Cedar Springs; temperature was 2. Car should have been at St. Thomas; temperature was 4. December 12. No data. Car should have been at Suspension Bridge; temperature was 4. December 13. Car was at St. Thomas; temperature was 4. Car should have been at Syracuse; temperature was 13. December 14. No data. Car should have been at West Albany; temperature was 22. December 15. No data. Car should have been at Springfield; temperature was 13. December 16. No data. Car should have been at Hartford; temperature was 10. December 18. Car was at Suspension Bridge; temperature was 16.

"Car No. 189015. December 7. Car was at Port Huron; temperature was 20. Car should have been at Port Huron; temperature was 20. December 8. No data. Car should have been at St. Thomas; temperature was 18. December 9. Car was at St. Thomas; temperature was 1. Car should have been at Black Rock; temperature was 4. December 10. Car was at St. Thomas; temperature was 4. Car should have been at Scranton; temperature was 5. December 11. Car was at St. Thomas; temperature was 4. Car should have been at Port Morris; temperature was 7. December 12. Car was at St. Thomas; temperature was 6. Car should have been at Danbury; temperature was 11. December 13. Car was at St. Thomas; temperature was 7. Car should have been at Hartford; temperature was 7."

There is also testimony in the record of average temperatures for the days in question.

We quote from reports to defendants:

"On December 8th it is beginning to snow and getting colder. On December 9th I find the situation at Niagara Frontier as follows: 'No freight trains moving, nor have any moved since Saturday' (Saturday was December 7th). * * *

"This particular statement covers the 24-hour period up to December 9th, midnight,' and for the period ending midnight, December 9, 1917, the report is as follows: 'All trains canceled, or trains annulled.' * * *

"The report of December 10th, it reads as follows: 'No freight trains moving nor have any moved since Saturday.' * * *

"This exhibit refers to traffic ending midnight on the 11th and says: 'Symbol trains annulled, hard storm condition.'

"Reading now another report for December 11, 1917, addressed to Mr. J. J. Corcoran at Detroit and issued at St. Thomas, I find the following: 'I hope you will hold back all freight possibly can at Detroit and Mr. Anderson at Sarnia the same on east-bound freight until we can get opened up at the frontier. We cannot take another car at Delbert yard. We are starting to fill passing tracks and they will fill up quickly. Middlemarch, Iona and Rodney will be filled tonight as each train has to set out entire train.' * * *

"On December 15th I find that the report shows that there were 452 cars set out on the Canadian division, eastern frontier, and these were all east-bound cars."

There was evidence of a bad storm over the entire Canadian division of the carrier on December 9th and that the weather conditions toward Niagara were "snow about a foot deep and high northwest winds drifting snow six below zero" and of many cancellations of trains in that territory.

Plaintiff's declaration claims damage by freezing and charges "failure to use due care in and about transportation and delivery and failure to make delivery within a reasonable time." Other facts must be stated later. Plaintiff had judgment in a trial without a jury. Defendants bring error.

The findings of the trial judge must be sustained unless they are contrary to the clear weight of the

evidence. If negligence of the carrier was the proximate cause of the loss of the pickles it is liable although frost may have contributed to cause the loss. See *Ignaszak* v. *Refrigerator Co.*, 221 Mich. 10, and cases cited. But unless the carrier has been guilty of such causal negligence it is not liable, and on the record we find it unnecessary to consider any other question.

There is insufficient proof to warrant a finding that the delay was the proximate cause of the loss of the pickles loaded into car 189015, which moved from Lakeview on December 5th. The finding to that effect is against the clear weight of the evidence. The pickles were subjected to destructive temperatures before there was any delay which might be termed unreasonable or negligent. It clearly appears that had the pickles moved on usual time and without delay they would not have escaped the area of low and destructive temperatures, would not have escaped freezing. It cannot be said that the freezing followed or was caused by the claimed unreasonable delay. See *Young & Co.* v. *Railway Co.*, 201 Mich. 39; 15 N. C. C. A. 745; *Lardie* v. *Railroad Co.*, 192 Mich. 77; *Barnes* v. *Railway Co.*, 42 N. D. 411 (173 N. W. 943) ; 1 Moore on Carriers (2d Ed.), p. 308; *Rezsek* v. *Southern Pacific Co.*, 181 N. Y. Supp. 117.

As to car 9668. There was evidence of slight congestion on the defendants' lines on December 6th. The first connecting carrier was the N. Y. C. R. Co. On December 7th defendants received notice that such connecting carrier would not accept any freight at Suspension Bridge. This was "meant to cover the frontier, that is Suspension Bridge." How long the notice was to be effective or was effective is not shown, though it is intimated that it might not have lasted 6 hours. The shipper on December 8th was not notified of the refusal of the N. Y. C. Ry. to receive

freight, but this car was routed over such line. Nor was he advised of the congestion of freight. But this car was subjected to a minimum temperature of 12 at Lakeview on December 8th, 8 at Plymouth on December 9th, 1 at Windsor on December 10th, 2 at Cedar Springs on December 11th, where it was delayed. Had there been no delay it would have moved on into an area of low and destructive temperatures. A finding that these pickles in an ordinary box car did not freeze when subjected to such temperatures is against reason and the clear weight of the evidence. The damage to these pickles had been done before the consequences of any of defendants' claimed negligence had attached. The routing, the failure to notify of congestion, and the delay were not the proximate cause of the loss.

A failure to switch the cars into a roundhouse at St. Thomas or elsewhere is found to be negligence. Plaintiff's evidence in that regard is:

"I know of my own knowledge that there are roundhouses at St. Thomas, East Buffalo, Black Rock, Suspension Bridge, Scranton, Port Huron and Detroit. These roundhouses are of such capacity that a freight car could be stored there for a day or two. There are tracks leading into the roundhouses. In order to store the freight cars they might have to take locomotives out of the roundhouse."

It was shown that St. Thomas was a city of 20,000 people. That the carrier had available any other means of storage is not shown. Nor is there evidence of the number or quantity of perishable shipments in transit and delayed. A finding of negligence on such a state of facts cannot be sustained. See *McGovern v. Railroad Co.*, 165 Wis. 525 (162 N. W. 668) ; 15 N. C. C. A. 751.

The plaintiff took practically no precaution to prevent freezing. The carrier should not be "required

to take precautions with goods which the owner himself deemed it unnecessary or undesirable to take." *Lardie* v. *Railroad Co., supra.*

It is found that the carrier was negligent in not notifying the consignor or the consignee of the delay and of the conditions of the weather at or near St. Thomas.    Under the facts of this case the notice would have availed nothing, and in view of the uncertainty of time of delay and the facts stated the failure to notify consignor in Michigan or consignee in Connecticut may not be said to be negligent.

If we were to adopt plaintiff's theory of average temperatures and of resistance to frost, and ignore minimum temperatures, we would be forced to the conclusion that the pickles did not freeze.    But they did freeze.    The clear weight of the evidence supports a finding that the defendants are not liable for the freezing, and consequent damage.    A judgment should have been entered for defendants.

Judgment reversed, without a new trial and with costs to defendants.

WIEST, C. J., and FELLOWS, MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.