BONURA & CO. v. PAYNE, Director General, Etc.

(December 12, 1927. Opinion and Decree.)
(January 2, 1928. Rehearing Refused.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Carriers and Passengers and Goods—Par. 135, 136.**

In an action against a carrier for damage to cantaloupes, which were shipped in good order and arrived at destination over-ripe and soft, burden of proof is on carrier to show that loss occurred without his fault, and proof that car was iced at all the usual places and that it was as promptly handled as possible under the circumstances is not sufficient, where the carrier admits that "one crate had been robbed" when car was opened at destination.

Appeal from the Civil District Court, Division "D". Hon. Mark M. Boatner, Judge.

Action by John Bonura & Company, Inc., against John Barton Payne, Director General, Etc.

There was judgment for defendant and plaintiff appealed.

Miller, Miller & Fletchinger, of New Orleans, attorneys for plaintiff, appellant.

Harry McCall, of New Orleans, attorney for defendant, appellee.

JONES, J. Petition, which was filed on June 1st, 1921, states that plaintiff purchased a car load of cantaloupes in good order from the Randolph Marketing Co. at Brawley, Cal., for six hundred eighty-four and 85-100 ($684.85) dollars f.o.b. Brawley, and it was shipped on June 25th, 1919, under a bill of lading, copy of which is attached; that through unreasonable delays or negligent handling cantaloupes were delivered over-ripe, soft and decayed, and that petitioner sold them for the best price obtainable, seven hundred seven and 10-100 ($707.10) dollars, that the freight paid by petitioner amounted to three hundred seventy-eight and 99-100 ($378.99) dollars and petitioner suffered a loss of three hundred fifty-six and 74-100 ($356.74) dollars, for which he promptly filed claim without avail. Petitioner then avers that the car arrived with one crate missing and that said crate had been stolen while in possession of defendant.

The defendant, while admitting the receipt of the goods in good order and their delivery in bad condition, makes in his answer two special defenses to the action in the following words: "If said shipment deteriorated during the time it was in respondent's possession, then and in that event such deterioration was due to the condition or vice of the shipment at the time it was delivered to respondent for shipment and/or the manner in which the said shipment was crated and loaded, the crating and loading being done by shipper and not by carrier."

Respondent pleads Par. 2 of Sec. 1 of the conditions of the bill of lading and admits loss of one crate, but denies all negligence

and obtention of best price for damaged goods by plaintiff. No objection is made to method of fixing damage.

There was judgment below in favor of defendant and plaintiff has appealed.

The evidence shows that the cantaloupes were shipped from Brawley, California, on June 25th, 1919, in good order and condition for a long haul; that they arrived in New Orleans on July 4th, 1919, at 5 p. m., nine days later; that they were high-grade "fancy cantaloupes" carefully packed and carefully inspected and carefully loaded; that such fruit should have stood a shipment of ten to fourteen days, if car were properly handled; that other shipments made from same crop during that immediate period harvested, packed and inspected in the same way stood a shipment of thirteen days for longer hauls without deterioration; that twenty to thirty per cent of cantaloupes actually picked in the field were rejected before packing; that plaintiff was notified on July 5th at 9 p. m. of arrival of car and at once inspected it with his broker and yard clerk of defendant, Coombes, who then signed an inspection certificate (which was identified on the trial below and filed in the record) stating that cantaloupes arrived "Over-ripe and soft, 1 crt. robbed".

Allegations of plaintiff as to cost and selling price and consequent loss were proved as alleged.

John Bonura, president of plaintiff company, stated that he inspected the car at 9 a. m. on July 5th with Coombes and his broker, Lally, and found fruit over-ripe and soft; that the damaged cantaloupes were sold from the car, without advertising, as quickly as possible; but it took until July 12th to dispose of the entire lot; that the ice bunkers were only one-quarter full and there was not sufficient ice, that he opened the car himself and found one crate missing; that he went on the roof of the car and pulled the block out to see exactly how much ice there was in the bunkers, that he and his partner and a salesman solicited the dealers on Poydras street, the main produce market, but he did not send this car to Fruit Exchange for sale as he sometimes did, because he thought it best to sell direct to trade; the melons received two days later were in good condition; that he figured to make one hundred ($100.00) dollars to one hundred fifty ($150.00) dollars profit on a car; that he supposed car was re-iced after it was turned over to him, as he employed a clerk especially for that.

Lally, the broker, confirmed Bonura as to damage inspection.

Wilkinson, plaintiff's clerk, confirmed him as to selling price and as to obtention of the best price possible. He also stated that cars usually arrived in nine days from California and this fruit was in his opinion damaged because of poor icing.

Plaintiff's receipt and release for twenty-four and 15-100 ($24.15) dollars, in full settlement for the "robbed crate" together with court costs up to that time was filed by defendant.

Coombes, team track clerk for defendant, states that car arrived with ice bunkers five-eighths filled, and he put in three thousand pounds more on July 4th and signed certificate above referred to on July 5th about 9 a. m.

Defendant offered in evidence the deposition of twelve employees, located at the various icing stations between Brawley

and New Orleans, who testify that the car was properly iced and handled promptly, except at one point when a delay of one day was caused by a sudden washout, which was repaired with all possible expedition.

As the above quoted evidence shows that the cantaloupes were shipped in good condition and arrived here in bad condition, and as it further shows that similar shipments from the same crop at same time stood a longer shipment, the burden of proof rested on defendant to show the cause of the damage and we do not consider that the proof as to usual filling of the bunkers with ice and prompt handling of the car is sufficient to rebut the presumption of negligence under all the attendant circumstances.

In this case there is one outstanding fact which the defendant has entirely *failed to explain*, namely the "robbed crate", for the doors of the car must have been opened if robbers removed the crate and the evidence shows that the opening of the car doors and the admission of warm air inevitably tends to over-ripen the fruit. The natural and usual presumption from proof of prompt handling and the customary re-icing of such cars is rebutted in this instance by the unavoidable conclusion that somewhere en route the doors of the car were opened.

The pertinent part of Par. 2 of Sec. 1 of the bill of lading reads: "Except in case of negligence of the carrier * * * and the burden to prove freedom from such negligence shall be on the carrier * * * the carrier shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon request of the shipper * * * or resulting from a defect or vice in the property or from riots or strikes."

It is thus seen that the carrier here directly assumes the burden of proving freedom from negligence, and this court in the case of Guidry vs. T. & P. Ry. Co., 6 La. App. 169, a case exactly similar to the instant one, except for the fact that none of the articles shipped were stolen en route, after citation of a long list of Louisiana decisions held that proof of usual reicing and prompt handling of the car containing the vegetables by the carrier was not sufficient to sustain the burden of proof resting on the defendant. In reaching this conclusion this court followed the ruling of the Supreme Court in the case of National Rice Milling Co. vs. N. O. & N. E. R. R. Co. et als, 132 La. 616, 61 So. 708, as set forth in the following words:

"According to law and the jurisprudence of this state, to be relieved from liability the carrier must prove that the loss or damage has been caused by accidental or uncontrollable event and this involves the proposition that the carrier must prove that it was free from fault."

On this point see also Eastman vs. T. & P. R. R. Co., 6 La. App. 638, and Sou. Cotton Oil Co. vs. N. O. & N. E. Ry. Co., 146 La. 51, 83 So. 374.

We, therefore, conclude defendant is liable.

As this is an interstate shipment, it is governed by the federal law as interpreted by the federal courts.

See C. N. O. & T. P. Ry. Co. vs. Rankin, 249 U. S. 319.

However, we are referred to no decision and we know of none where the federal courts have reached a conclusion different from the above.

The controlling federal law, namely, the Carmack Amendment to the Interstate Commerce Act of June 29, 1906, C. 3591, 34 Stal. 584 (U. S. Comp. St. Suppt. 1911, p. 1281), requires the carrier to issue a bill of lading and makes it liable to the lawful holder thereof "for any loss, damage or injury to the property caused by it and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed." Although the same point was made and elaborately argued in the Rice case above quoted our Supreme Court held that the Federal decisions were in harmony with the conclusion reached therein.

Defendant argues that the correct measure of damages is the difference between the market value of the damaged articles and their value in good order at the place of delivery at the time shipment should have arrived; that there is no evidence showing either of these values and consequently quantum of damages is not proved.

Defendant has stated correctly the rule for fixing damages in such cases.

See Chicago M. & S. T. R. Co. vs. Mc-Caull Denemore Co., 253 U. S. 97.

Hicks vs. Guinness, 269 U. S. 71.

Crail vs. I. C. R. R. Co., 13 Fed. 459.

Armested vs. Shreveport, Etc., 108 La. 171, 32 So. 456.

Here the evidence shows there was no market value for such damaged fruit, and these cantaloupes were sold for best price possible, but there is no evidence as to market value of good cantaloupes in New Orleans on July 5, 1927.

As plaintiff set forth fully in his petition that the damaged cantaloupes were sold for the best price obtainable in the market and as he only prays for the amount of his actual loss and as defendant simply denied in his answer that the best possible price had been obtained for damaged fruit, but made no objection to the method of calculating the damage, we think the point should have been raised in the lower court, when plaintiff could easily have shown the price of good cantaloupes in New Orleans on July 5th. See Acme White Lead vs. Gulf Naval Stores, No. 10,008 C. of A., this day decided.

Defendant also contends that plaintiff was guilty of contributory negligence in keeping the melons in the car while he was selling them and in taking six days to dispose of them.

On this point Bonura testified that he had no refrigerator in his store at the time and that it was his custom to keep fruit in the refrigerator car until he could sell it and that he had a man whose sole business was to watch the cars and see that the ice did not run out. Bonura also testified that he expected to make one hundred to one hundred and fifty dollars on this car, if fruit had been in good condition; that he was handling two or three cars of cantaloupes per week at that time; that he received another shipment two days later and sold them.

Plaintiff's testimony and that of Wilkinson to the effect that it was the very best price obtainable is uncontradicted and unimpeached. Therefore, we must take it for true.

Wilkinson swears the cantaloupes were sold below the prevailing price of first class melons.

The Cummins Amendment to the Interstate Commerce Act of March 4, 1915, provides that the carrier shall be liable for the full actual loss and the U. S. Supreme Court in the Denemore case, cited above,

held that the consignee was entitled to his full actual loss on the bases of value at destination, even if that value is greater than the value at the time and place of shipment, notwithstanding the uniform bill of lading provided for computing damages on the latter basis.

Here plaintiff is only demanding his actual loss, which is apparently less than he was entitled to by correct method of computation. Defendant has no serious cause of complaint on that score.

No useful purpose will be served by remanding this case for further proof as to market value of good cantaloupes on July 5, 1919. The case has already been in Court over six years.

For above reasons the judgment below is reversed and it is now ordered that there be judgment against James C. Davis, Director General of Railroads and in favor of John Bonura & Co., Inc., in the full sum of three hundred fifty-six and 74/100 ($356.74) dollars with legal interest from July 15, 1919, and all costs.

See Stockbridge vs. Martin et al, 162 La. 601, 110 South. 828.

---

## ORDER.

The attention of the Court having been called to a clerical error in the decision of December 12, 1927, it is now ordered by the Court ex proprio moto that same be changed to read as follows

The judgment below is reversed and it is now ordered that there be judgment against Andrew W. Mellon, Director General of Railroads and in favor of John Bonura & Co., Ltd., in the full sum of three hundred fifty-six and 74-100 dollars ($356.74) with legal interest from July 15, 1919, and all costs.