(118 So. 822)

No. 28471.

DEJEAN v. LOUISIANA WESTERN R. CO.

Oct. 29, 1928.

Denegre, Leovy & Chaffe, of New Orleans, and Pugh & Buatt, of Crowley, for appellant.

John W. Lewis, of Opelousas, and W. J. Carmouche, of Crowley, for appellee.

LAND, J. Plaintiff has brought the present suit to recover of defendant company the value of 25 bales of cotton, purchased by plaintiff from the Rayne Cotton Gin Company, and destroyed by fire September 17, 1924, while loaded in a car of defendant company on a spur track near the plant of the gin company at Rayne, La.

At the time of the fire, the cotton had been consigned to order of Rayne Cotton Gin Company, notify Armand L. Dejean, Opelousas, La.

Judgment was rendered in the lower court in favor of plaintiff in the net sum of $2,579.15, with interest from September 17, 1924, and defendant company has appealed.

1. Plaintiff alleges that the loss of the cotton was occasioned solely through the gross negligence of defendant company, and was in no way due to his fault.

Defendant company denies any negligence on its part, and avers that the fire that burned the cotton had its origin in the gin of the Rayne Cotton Gin Company, and that the destruction of the cotton was brought about by "such accidental and uncontrollable event."

Defendant company specifically avers in its answer:

"That said cotton, no doubt, caught fire from either a match or a small piece of steel or other metal when the cotton was ginned, causing a spark to develop which was smothered when the bale was packed, and, afterwards burned its way out from the inside of the bale or bales, after said bales were placed in the car; or from a spark from the fire in the gin for which your defendant was not responsible."

The liability of defendant company for the cotton received for shipment is fixed by article 2754 of the Civil Code, which reads as follows:

"Carriers and watermen are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

The words "accidental and uncontrollable events," as used in this article of the Civil

Code, are the equivalents of "cas fortuit" and "force majeure" of the French text.

The "cas fortuit" or "fortuitous event" is defined as—

"That which happens by a cause which we cannot resist." R. C. C. art. 3556(15).

"Those accidents are said to be caused by superior force ['force majeure'] which human prudence can neither foresee nor prevent." R. C. C. art. 3556(14).

"The term 'vis major' (superior force) is used in the civil law in the same way that the words, 'act of God,' are used in the common law, and so also is the term 'casus fortuitus.' ·

"By the act of God is meant inevitable accident or casualty."

Brousseau & Co. v. Ship Hudson, 11 La. Ann. 427.

In the Brousseau & Co. Case, the court quoted the following extract from Story on Bailments:

"By 'inevitable accident' is meant any accident produced by any physical cause, which is irresistible; such a loss by lightning or storms, by the perils of the seas, by an inundation, or earthquake, or by sudden death or illness. By 'irresistible force' is meant, such an interposition of human agency, as is, from its nature and power, absolutely uncontrollable."

In Eugster & Co. v. West & Co., 35 La. Ann. 121, 48 Am. Rep. 232, the court said:

"The Pandectes Françaises teach that 'on entend par cas fortuits les accidens qu'on n'a pu ni prévoir ni empêcher. So Emerigon on Insurances, 285, by accident ('cas fortuit') is meant a superior force which cannot be foreseen nor resisted. In its legal sense, 'fortuitous event' is synonymous with 'act of God' of the common law."

"The carrier must prove the precise cause of the loss. It will not suffice to prove merely due diligence, but the carrier must prove, moreover, that the accident was occasioned by a fortuitous event, or by irresistible force, or by a defect of the thing itself, or by a fault of the shipper. Fuzier-Herman, Code Civil, vol. 4, p. 419, No. 1. * * *

"In the civil law loss by fire is not considered a fortuitous event, as it arises almost invariably from some act of man."

Lehman, Stern & Co. v. Morgan's Louisiana & Texas R. & S. S. Co., 115 La., pages 8 and 9, 38 So. 875, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann. Cas. 818.

As the accident in this case was not occasioned by a fortuitous event nor by irresistible force, defendant company must be held liable, even though due diligence may have been exercised on its part in inspecting the shipment when received and in sealing the car at the time.

■ 2. The next defense urged by defendant company is that plaintiff has no interest in this suit by reason of the fact that he has been paid in full by the insurance company.

The sight draft found in the record is as follows:

"Loan Draft—No. 14.

"Atlanta, Ga., September 23, 1924.

"[Stamped] No. Pro. 84–61.

"Cotton Insurance Association of Atlanta, Ga. At sight pay to the order of Armand L. Dejean and Opelousas-St. Landry Bank & Trust Co. Opelousas, La. $2,630.83 Two Thousand Six Hundred Thirty Dollars Eighty-three cents, which sum is advanced as a loan repayable only to the extent of any net collection I may make from any carrier, bailee or others on account of loss to 25 bales of cotton due to fire at Rayne, Louisiana on or about September 18th, 1924, or from any insurance effected by any carrier, bailee or others on said property, and as security for such repayment we hereby pledge to National Fire Insurance Company the said claim and to deliver to them duly endorsed the bills of Lading for said property, and we agree to enter and prosecute suit against said Railroad, carrier, bailee or others on said claim with all due diligence at the expense and under the exclusive direction and control of the said National Fire Insurance Company.

"[Signed] John S. Hudgins, for Manager.

"To the Cotton Insurance Association through the Citizens' & Southern Bank—Atlanta, Ga.

"(Loan Receipt Attached.) MKD. 'P—D'

"Claim No. 19022.

"[Signed] J.S.H., Loss Clerk. ·

"[Stamped] Paid Sep. 29, 1924. Check No. 22965.

"[Stamped] Paid Collection Department, Sep. 29, 1924. The Citizens' and Southern Bank, Atlanta, Ga."

Indorsed:

"Notice—All parties to whom this draft is payable must endorse in ink. Received from

the National Fire Insurance Company the amount as stated herein, subject to the conditions named in face of draft.

"[Signed] Armand L. Dejean."

The policy in this case was issued by the National Fire Insurance Company through the Cotton Insurance Association, of which the National Fire Insurance Company is a member, and was paid by the National Fire Insurance Company. The draft is signed by John S. Hudgins, the loss adjuster, who passes on all losses and makes settlement for same. Tr. p. 88.

No insurance for the loss of the cotton has been paid under the policy to plaintiff, the assured, but a loan or advance has been made to him by the insurance company, to be repaid by him to the extent of any net collection the assured may make from the carrier on account of the destruction of the 25 bales of cotton by fire at Rayne, La., on or about September 18, 1924.

It is clear, therefore, that plaintiff has an interest in the prosecution of the present suit.

3. The bill of lading in this case contains the following stipulation in paragraph (c) of section 2:

"Any carrier or party liable on account of loss or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance: Provided, That the carrier reimburse the claimant for the premium paid thereon."

In the event the judgment rendered against defendant company should exceed the amount received by plaintiff from the National Fire Insurance Company, defendant company claims, under the benefit of the insurance clause in the bill of lading, that it is entitled to credit for this amount, less the premium paid by plaintiff.

And, if the judgment rendered against defendant company should be less than the amount received by plaintiff from the insurance company, then defendant company prays that the demand of plaintiff be rejected.

It is provided in paragraph 6 of the policy issued to plaintiff that:

"Upon presentation of proof of a loss to cotton described in Paragraph One of this form, while in possession of any carrier or other bailee, this Company, provided that all provisions of this policy have been complied with, will advance, as a loan to the assured or the holder of a certificate issued as provided herein, the amount of the damage to said cotton, repayable only to the extent of any recovery from such carrier or other bailee; however it is understood *that this insurance shall not cover cotton for which any carrier or bailee may be liable, or shipped under a bill of lading containing a stipulation that the carrier may have the benefit of any insurance thereon,* nor where any carrier or other bailee has insurance which would attach if this policy had not been issued, and this insurance shall not issue to the benefit of any carrier or other bailee."

Under these stipulations in the policy, the insurer would, in no event, be liable to plaintiff, if the carrier was liable. If recovery is had, to that extent the insurer will receive payment or be reimbursed for its loan to the shipper.

If nothing is recovered from the carrier, plaintiff will retain the money received by him without being under obligation to make any repayment of the amounts advanced. In other words, if there is no recovery here, the amounts advanced will operate as absolute payment under the policies, instead of a loan or mere conditional payment.

"Agreements between shippers and insurers after a loss that the latter shall adjust the loss by making a loan to the former, repayable to the extent only of any subsequent net recovery against the carrier, and that the insurers shall have the conduct of the suit against the carrier which the shippers agree to begin, are valid, where, by the bills of lading, the carrier is given the benefit of any insurance effected by the shippers, and by the insurance policies the insurers are not liable to the shippers if the carrier is liable. Sums paid over under such agreements should be regarded as loans or conditional payments, and not as absolute payments

of the insurance, which, under the bills of lading, would relieve the carrier from liability to anyone." (Syllabus) Luckenbach et al. v. W. J. McCahan Sugar Ref. Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1528.

The claim of defendant company, under the benefit of the insurance clause in the bill of lading, for credits in excess of the amount of judgment which may be rendered against it, is without merit and cannot prevail in this case.

4. The judgment of the lower court awarded plaintiff the full sum of $2,677 for the value of 12,308 pounds of cotton at 21¾ cents per pound, subject to a credit of $97.85, the amount of freight on the cotton at 79½ cents per hundredweight, leaving the net amount of the judgment $2,579.15, with interest from September 17, 1924, the date of the destruction of the cotton by fire.

Defendant company complains of the price of 21¾ cents per pound allowed in the judgment, and calls our attention to the price of 20½ cents per pound testified to by Levy, manager of the Rayne Cotton Gin Company, and also to the price of 21⅜ cents per pound testified to by plaintiff.

We have failed to find any evidence in the record to justify the price of 21¾ cents per pound awarded in the judgment of the lower court. It is true that Levy testified to the price of 20½ cents per pound as prevailing at Rayne, La., on September 17, 1924, when the cotton was destroyed by fire; but, in view of the fact that the price of 21⅜ cents per pound is testified to by plaintiff, and the loss was adjusted by the insurance company at that price, based on the cotton reports of the New Orleans and the New York Exchanges, we are satisfied that 21⅜ cents per pound was the correct market price prevailing at Rayne, La., when the cotton was burned. Apparently, the price of 21¾ cents per pound fixed in the judgment is a clerical error. The judgment should therefore be corrected in amount to the sum of $2,630.83, less the

amount of freight, $97.85, leaving a net balance of $2,532.98.

5. Defendant company also contends that this is a suit ex delicto, and that the judgment should be amended to change the date of the interest from the date of the destruction of the cotton, September 17, 1924, to the date of judicial demand, June 2, 1925, and, in support of this contention, cites Maxwell & Putnam v. S. P. R. Co., 48 La. Ann. 385, 19 So. 287; National Rice Milling Co. v. N. O. & N. E. R. Co., 132 La. 615, 61 So. 708, Ann. Cas. 1914D, 1099; Lehman, Stern & Co. v. M. L. & T. R. Co., 115 La. 9, 38 So. 873, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann. Cas. 818; and Act 206 of 1916, allowing legal interest from date of judicial demand on all judgments sounding in damages, ex delicto.

All of the above suits were brought under contracts of affreightment for the loss of shipments destroyed by fire, and interest was allowed from judicial demand.

In Maxwell & Putnam v. S. P. R. Co., 48 La. Ann. 385, 19 So. 287, the plaintiff sued for the value of 110 bales of cotton which had been burned. It is stated in the opinion at page 390 of 48 La. Ann. (19 So. 289):

"This is not a suit ex contractu for the enforcement of said covenant; but one ex delicto for the reparation of the loss which plaintiffs have sustained through the alleged negligence and fault of the defendant."

Plaintiff's suit is analogous to the case of Maxwell & Putnam, as it is an action to recover the value of cotton shipped and destroyed by fire through the negligence of defendant company.

The present suit is therefore ex delicto, and interest must be allowed from date of judicial demand, June 2, 1925. Act 206 of 1916.

6. It is idle for defendant company to contend at this late date that only 24 bales of cotton were destroyed by fire, since the answer of defendant company admits that 25

bales were contained in the car, as alleged in paragraph 1 of plaintiff's petition. See paragraphs 1 and 2 of defendant's answer.

7. Defendant company has filed in this court a plea that the demand of plaintiff has perempted, and is barred under clause B of the contract of affreightment, on the ground that there is no evidence in the record to show that any demand in writing was made by plaintiff, on the defendant company within six months after a reasonable time had elapsed for delivery.

In the first place, the plea of defendant company is not a statutory prescription which may be tendered in this court on appeal.

In the second place, defendant company admits in its answer that amicable demand was made on it repeatedly and in vain, and did not make the plea of peremption in the trial court.

The question as to the peremption of plaintiff's demand should have been raised in the lower court by defendant company, and plaintiff should have been given an opportunity to have met that issue during the trial. The plea is therefore overruled.

It is ordered that the judgment appealed from be amended in the following particulars:

1. So as to reduce the price of the cotton destroyed by fire from 21¾ cents per pound to 21⅝ cents per pound, and so as to reduce its total value from $2,677 to $2,630.83, leaving a net balance of $2,532.98, after deduction of freight in the sum of $97.85.

2. So as to allow interest to run from judicial demand, June 2, 1925, instead of from the date of the destruction of the cotton by fire, September 17, 1924.

It is now ordered that the judgment, as amended, be affirmed; that the appellee pay the costs of appeal; and that defendant company pay all other costs.

O'NIELL, C. J., concurs in the decree.