## CLOSE v. MISSOURI PAC. R. CO.

### No. 5976.

Court of Appeal of Louisiana.
Second Circuit.

May 29, 1939.

Rehearing Denied June 28, 1939.

Writ of Certiorari and Review Denied Oct. 30, 1939.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

K. Hundley, of Alexandria, for appellee.

TALIAFERRO, Judge.

On December 13, 1937, Hines & Company, at Salt Lake City, Utah, delivered to the Salt Lake & Utah Railroad there, consigned to plaintiff at Alexandria, La., 600 sacks of onions in good condition, with instruction that the shipment be made under Uniform Straight Bill of Lading with standard ventilation conditions. The consignment was routed over the Union Pacific Railroad to Kansas City, Mo., with instructions to be there turned over to defendant, the Missouri Pacific Railroad Company, for transporting and delivery. The total distance of the routing is about 1,800 miles.

The shipment arrived in Alexandria on schedule time at 8:25 P. M. December 17 and was, at an early hour the following morning, delivered to plaintiff. It was then discovered that some of the onions were frozen and, therefore, not fit for market. They were reworked. The value of those discarded, plus expense of reworking, was $134.80.

Plaintiff seeks to recover from defendant, the delivering carrier, the above stated amount. He alleges that under the contract of carriage covering said shipment, the lines over which it was routed were obligated and were instructed, as a means of preventing the freezing of the onions, to close all vents in the car when the outside temperature fell to 32 degrees above zero Fahrenheit, and to remove the plugs in the vents and leave them open thereafter when the temperature rose above the freezing point. The truth of these allegations is admitted by defendant. The only negligence charged to defendant is reflected from the following excerpt from the petition, viz: "That defendant failed to carry out said instructions and by reason thereof said shipment froze while in transit over the line of defendant and was received by him in a frozen condition."

Plaintiff also alleges that he consented to receive the shipment only upon the assurance of defendant's local agent, "acting within the scope of his authority" that the loss arising from the damaged condition of the onions would be adjusted.

Defendant denies that it, nor the connecting lines concerned, their agents or employees, was guilty of any negligence whatsoever in the handling and transporting and delivery of said consignment, but, on the contrary, avers that they rendered full service and performed every duty that devolved upon them as carriers; that under the terms of the contract of carriage, there is no liability upon it or them, in the absence of negligence in the handling and transporting of the consignment.

After the joining of issue, plaintiff filed a plea of estoppel, based upon the following allegations, viz: "That the Defendant herein by its actions and conduct in leading plaintiff to believe that it would pay for damage to the shipment in question herein prior to his accepting the same caused appearer to accept said shipment when otherwise he would have declined the same is now estopped to deny its liability for the loss suffered by him."

There was judgment for plaintiff, and after unsuccessful effort for new trial or rehearing, defendant appealed.

The case was tried upon an agreed stipulation of facts, supplemented by a small amount of oral testimony. This action narrowed the issues. It obviated the taking of testimony of many witnesses without the state, and the building up of a large record on a clear cut legal point.

If plaintiff is entitled to recover at all, it is admitted that the amount sued for is the correct measure of defendant's liability.

Tables were mutually introduced in evidence indicating the temperature registrations, and the condition of the transit plugs or vents of the car containing the onions, as to whether open or closed, at and be-

tween various points along the railroad lines to Kansas City. These are as follows, viz:

| Place | Temperature | Vents |
|---|---|---|
| Salt Lake City | 40 degrees | Open |
| Ogden (Utah) | 40 " and falling | Open on arrival, closed on departure |
| Green River | 23 " | Closed on arrival and departure |
| Lorimi | 16 " | Closed on arrival and departure |
| Cheyenne | 22 " | Closed on arrival and departure |
| North Platte | 25 " | Closed on arrival and departure |
| Marysville | 31 " | Closed on arrival and departure |
| Kansas City | 33 " | Closed on arrival and while held |

After leaving Kansas City the vents were all opened, because the temperature registration was above freezing and they remained open as the temperature justified until the car arrived at Alexandria.

The correctness of this table reading is admitted by plaintiff. It is not intimated that readings at other points should have been taken. There would appear no good reason for so doing between Ogden and Kansas City, as the temperature between these points was uniformly below freezing. As is reflected from the said table, the vents were closed for the entire distance. Temperature was above freezing between Salt Lake City and Ogden.

■ The lower court found that the evidence proves defendant substantially established that it had complied with the shipping instructions and contract of carriage. We think it complied literally therewith.

The only charge of negligence made against defendant was that the vents were not closed and opened as was the railroad's duty, and since plaintiff now admits that this duty was met, it seems to us that his case topples therewith. However, we shall discuss and pass on other issues raised.

Plaintiff argues that the carrier must not only prove that it exercised due care and prudence as regards a shipment of perishable products, where loss or damage occurs enroute, but must also prove the precise cause of the loss and that it did not result from a fortuitous or uncontrollable event.

■ In this case the cause of the loss is admitted. The onions froze. They froze because the temperature was so low for the greater part of the journey that protection afforded by compliance with the Standard Ventilation regulations was inadequate to prevent this result; probably those nearest the exterior car walls froze. But the railroads did not agree, nor were they legally obligated to do more. The consignment was given the protection the shipper asked for and for which payment was made.

Plaintiff testified that he is well acquainted with the "Standard Ventilation" service offered by railroads and while he did not instruct Hines & Company to make shipment of these onions under such service, he would have done so had he given any instructions on that score. He also testified that he is well acquainted with the "heater service" which carriers make available for shipment of perishable goods in cold weather and knows that such service is employed "for the purpose of keeping merchandise from freezing under very low temperatures, some merchandise," and that there is an increase in charge for such service.

■ A common carrier, under the civil law, accepting perishable commodities for transporting does not become an insurer of delivery thereof in sound condition. If received in sound condition and delivered unsound, the burden rests upon the carrier to prove that the unsoundness was not a result of its negligence or lack of care, if it would absolve itself from responsibility for the damage. Under the contract of carriage involved in this case, the carrier did not guarantee delivery of the shipment in sound condition. It agreed only to employ certain well recognized methods of preventing the shipment from freezing, but beyond this it did not bind itself. If the temperature descended to levels which rendered impotent, wholly or partially, the efficacy of these preventive measures, the blame may not be visited upon the carriers. The consignor knew that the shipment would pass through sections of the country in which, at that season of the year, the temperature often went below freezing and remained so for long periods. In a way, he was willing to take the chance involved, and plaintiff admits that he would have likewise acted.

Appellee relies upon Art. 2754 of the Revised Civil Code, and some decisions of the courts of this state interpreting it. The Article reads as follows, viz: "Carriers and waterman are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

The cases cited are: Lehman, Stern & Co. v. Morgan's L. & T. & S. S. Co., 115 La. 1, 38 So. 873, 70 L.R.A. 562, 112 Am. St.Rep. 259, 5 Ann.Cas. 818; National Rice Milling Co. v. New Orleans & N. E. R. Co., 132 La. 615, 61 So. 708, Ann.Cas.1914D, 1099; Noel· Bros. v. Texas & P. R. Co., 16 La.App. 622, 133 So. 830; Dejean v. Louisiana Western R. Co., 167 La. 111, 118 So. 822; Bonura & Co. v. Payne, Director, Gen'l, 7 La.App. 754.

The law as announced in these cases is unquestionably sound.

In the Lehman, Stern & Co. case, cotton was damaged while in defendant's possession; the damage was directly caused by fire of undetermined origin. It was held that a fire is not fortuitous, nor an uncontrollable event. Lack of knowledge of its origin was not sufficient to free the carrier from liability for its results.

In the Rice Milling case, an unprecedented flood damaged two car loads of rice. It was found and held on a question of fact that defendant did not use due care and diligence to prevent the damage and was, therefore, responsible under the bill of lading.

The Dejean case is very much like the Lehman, Stern & Co. case, supra. Cotton was damaged by fire after being loaded in a car placed on a side track.

It was held in the Noel Bros. case that the common law does not apply as respects right of recovery for damage to intrastate shipments; that such question must be determined by the Louisiana laws pertinent thereto. It was also held therein:

"Carrier, to escape liability for damage to intrastate shipment, has burden of proving precise cause of loss, and that accident was not caused by fortuitous event or irresistible force. * * *

"Carrier was liable for damage to intrastate shipment of cotton by reason of fire originating from unknown cause."

The court held in the Bonura & Co. case that where cantaloupes became overripe and soft in transit, although it was shown that the car was iced at the usual places, the carrier, notwithstanding, was responsible for the resultant damage, in view of the fact that it admitted that it was discovered at destination that one of the crates had been robbed. This fact, of course, implies that the car had been entered enroute, the theft committed and warm air admitted therein.

In the present case, we do not think the law of Louisiana nor its jurisprudence controlling of the primary issue therein.

■ It is certain this consignment of onions was damaged by freezing before being delivered to the defendant; that it was in a damaged condition when received by defendant. Prior to the adoption of the Carmack amendment, 49 U.S.C.A. pp. 87, 88, Sec. 20, par. 11, in view of these facts, the delivering carrier could not have been condemned to pay for the loss. It is because of this Federal Law, and not the law of Louisiana, that a carrier, after accepting and delivering within the State, in a damaged condition, an interstate shipment may be held responsible to the consignee for the loss, with the concurring right by it to force the connecting carrier, primarily responsible, to indemnify it.

If there is no liability by the receiving and intermediate lines to defendant, arising from damage in transit, surely, in view of the undisputed facts, none ·attaches to defendant, the delivering carrier. And we entertain no doubt that under the common law, which prevails in the states over which the consignment passed before reaching Kansas City, these lines may not be held responsible for the loss.

Due to our latitudinal location, there does not appear to have arisen in this state any cases involving a claim for damages on account of the freezing of perishable products while in the possession of a carrier. Many cases have been decided by the courts of sister states, particularly those farther north, in which such character of claims formed the basis of suit. These, with little or no exception, hold that where the facts appear as we find them to be herein or are similar, the carrier may. not be held for the loss.

A case, strongly in point, is Cassone v. New York, N. H. & H. R. Co., 100 Conn. 262, 123 A. 280, 283, which was an action to recover the value of a carload of grapes allegedly ruined because of the carrier's fault in not properly caring for the shipment. The claim was denied. The court, inter alia, said: "This shipment was made in September when cool weather generally prevails. The state of the weather during transportation is not found. The consignor took advantage of the choice, which was his, and contracted for transportation in a dry car without ice, relying upon ventilation to protect the fruit. A shipper cannot make that choice and then insist that the

carriers must assume the peril of any loss that comes to the fruit in transit in the way contracted for, if it develops, on delivery of the grapes, that ventilation failed to keep the grapes from decay when refrigeration might have done so. Transporting the fruit in the way contracted for cannot constitute negligence and impose on the carriers liability arising from the inherent tendency of fruit to ripen or decay."

Anent the question of the carrier's liability as insurer, the court definitely said: "The common-law liability of a carrier as an insurer does not extend to certain classes of articles shipped. As to live stock, fruit, vegetables, or articles with an inherent vice, the implied obligation of the carrier as insurer does not extend. Coupland v. Housatonic R. Co., 61 Conn. [531], 539, 540, 23 A. 870, 15 L.R.A. 534; Evans v. Railway Co., 111 Mass. 142, 15 Am.Rep. 19; Hussey v. The Saragossa, Fed.Cas. No. 6,949, 3 Woods 380; 1 Moore on Common Carriers, p. 31, § 3 and note 26; 4 Elliott on Railroads (3d Ed.) Section 2276; Adams Ex. Co. v. Scott, Ann.Cas.1913D, note on page 974."

The court of appeals of Missouri in Clemons Produce Co. v. Denver & R. G. Railroad Co., 208 Mo.App. 100, 219 S.W. 660, 662, rejected a demand for value of potatoes frozen in transit. The shipment was made in January when the weather was extremely cold. The fact that the potatoes were susceptible to freezing, and that the shipper had chosen the method of shipment, were emphasized by the court in reaching a decision. In passing, it was said: "He, of course, knew the character of freight he was shipping at the time he delivered it. He knew its liability to injury by extreme cold weather, and he chose to assume the risk of all such injury as did not result from defendant's negligence."

In Standard Pickle Co. v. Pere Marquette R. Co., 222 Mich. 639, 193 N.W. 300, 302, the freezing of a shipment of pickles in brine was involved. The contract of carriage did not include heater service to protect the pickles from freezing, which allegedly occurred because the carrier took no extra precautions against very low temperatures. The supreme court of Michigan reversed the trial court, holding that the pickles were subject to destruction from freezing, and that: "The plaintiff took practically no precaution to prevent freezing. The carrier should not be 'required * * * to take precautions with goods which the owner himself deems it unnecessary or undesirable to take.' Lardie & Son v. Mainistee R. R. Company [192 Mich. 77, 158 N.W. 31], supra."

The question before us is more thoroughly discussed in Blodget Co. v. New York Cent. R. Co., 261 Mass. 365, 159 N.E. 45, 47, 55 A.L.R. 900, than in any other case cited by counsel or found by us. We shall quote from it at length:

"The first question is whether the defendant is liable at common law for the injury arising while the celery was in transit. A common carrier generally is practically an insurer of goods in its possession. This rule, however, is subject to certain well-recognized exceptions. A carrier is not liable for loss or damage arising from an act of God, from the public enemy, nor for the destruction of goods or injury due to their inherent nature, if the negligence of the carrier did not occasion or contribute to the injury. It has been held that where perishable goods such as fruit and vegetables are injured or destroyed in transit, the carrier is not liable if its own negligence did not cause the injury. It was said in Swetland v. Boston & Albany Railroad Co., 102 Mass. 276, at page 283:

" 'If the owner of goods, which are liable to be injured by freezing, chooses to send them at a season of the year when they are exposed to such a risk, he takes the risk himself.'

"A carrier, in the absence of an agreement to do so, is not bound to heat cars to protect perishable goods from freezing. McGovern v. Ann Arbor Railroad Co., 165 Wis. 525, 162 N.W. 668; McGraw v. Baltimore & Ohio Railroad, 18 W.Va. 361, 41 Am.Rep. 696; Cassone v. New York, New Haven & Hartford Railroad, 100 Conn. 262, 123 A. 280; Ross v. Maine Central Railroad, 112 Me. 63, 90 A. 711; Schwartz & Co. v. Erie Railroad, 128 Ky. 22, 106 S.W. 1188, 15 L.R.A.(N.S.) 801; Vail v. Pacific Railroad, 63 Mo. 230; Standard Pickle Co. v. Pere Marquette Railway, 222 Mich. 639, 193 N.W. 300; White v. Minneapolis & Rainy River Railway, 111 Minn. 167, 126 N.W. 533; Atlantic Fruit Co. v. Pennsylvania Railroad, 149 Md. 1, 130 A. 63; Leypoldt & Pennington Co. v. Davis, Director General, 112 Neb. 350, 199 N.W. 463.

"In the case at bar the goods were shipped about the middle of December, a time in this climate when freezing weather is not unusual, but might reasonably be expected. There is nothing in this record to show

that the cause of injury to the shipment was so unexpected, unusual or extraordinary as to be said to have arisen from an act of God. Such weather is an event which according to common experience, naturally might be expected. The case cannot be distinguished in principle from Swetland v. Boston & Albany Railroad, supra, and is governed by it.

"It is manifest that at common law the defendant cannot be charged with liability merely because heat was not furnished to protect the celery.

\* \* \* \* \* \*

"As the refrigerator car furnished by the defendant was in good condition in all respects when the shipment was made, and as there was no additional charge for heat but only the regular carload rate prescribed by the tariff was paid, and as the car moved over the defendant's lines in the usual course and with reasonable dispatch, it is plain that the defendant did not fail in any duty it owed to the plaintiff unless it was bound to heat the car. We are of opinion that no such obligation rested upon the carrier."

The same principles of law are followed in the following cases arising in different sections of the United States, viz: Fort v. Denver & R. G. R. Co., 69 Colo. 441, 195 P. 109; McGovern v. Ann Arbor R. R. Co., 165 Wis. 525, 162 N.W. 668; Presley Fruit Co. v. St. Louis I. M. & S. Ry. Co., 130 Minn. 121, 153 N.W. 115; Schwartz & Co. v. Erie R. Co., 128 Ky. 22, 106 S.W. 1188, 15 L.R.A.,N.S. 801.

Plaintiff testified that he would not have accepted the shipment, after discovering its damaged condition, but for the agreement by defendant's agent that he would give him (plaintiff) "an inspection and a notation as they did." The notation referred to is that which was made by the agent on the freight bill after the exact extent of the loss was ascertained by reworking the onions. He also stated that he has been purchasing perishable produce in the territory where this shipment originated for twenty (20) years; that a number of cars, in whole or part, froze enroute, claims for which were invariably paid by the defendant.

The trial judge, after commenting upon the fact that claims for loss of or damage to shipments to plaintiff over a period of twenty years had been uniformly paid by defendant, said: "While, from the jurispru-dence on this question, as indicated by the decisions cited and quoted from in the very able briefs of both counsel filed, the court is inclined to the opinion that by construing strictly the terms of the "Standard Ventilation" contract under which this shipment was made, and defendant's showing of strict compliance therewith, the case would be with the defendant, yet when we take into consideration the fact that defendant had been paying similar claims under similar shipments for so many years, we are inclined to the opinion that plaintiff should recover in this case for having been "lulled" as it were into a sense of security, thinking that if any thing did happen to this particular shipment by which a loss occurred from freezing the railroad would pay the damages as it had been doing in the past."

■ We are unable to concur in these conclusions as a basis of defendant's liability. The reasons which impel us to a dissent therefrom are forcefully set forth in brief of counsel, which we adopt, viz: "That holding, Your Honors, is an adjudgment on matters here immaterial and irrelevant, without foundation or support in law or justice. It is a holding that presumes a confession of judgment without regard to the law or the evidence at bar, and which deprives your Defendant from the protection of its property by due process of law. It serves as a denial to Defendant of the right to study each case upon its own facts, to pass upon the merits of each situation arising. Neither Counsel nor Your Honors know what this Defendant may have done with other claims within the past twenty years, but we can scarce assume that the Missouri Pacific Railroad Company has paid each and every claim presented by plaintiff without regard to the question of liability in the premises. It may be that there was an apparent liability in such cases that demanded a settlement, or the cases may have been compromised for less than the cost of their defense. But even the Trial Court was convinced that there was neither negligence nor liability in the case at bar. Why, then, the imposition of liability under conditions which would ever prohibit Defendant from standing upon its legal rights."

■ There is no merit in the plea of estoppel. Defendant's agents did not attempt to commit it to liability for the damage to the onions. They had no authority to do so. Defendant is in bankruptcy and for this reason, if for no other, any promise by

such agents of the nature asserted would have been ineffective.

Plaintiff testified that the local agent, as a condition precedent to plaintiff's acceptance of the shipment, argued that an inspection would be made and the loss, etc., noted on the freight bill, and that this was done.

Being of the opinion that the judgment appealed from is erroneous, it is, for the reasons herein assigned, reversed, annulled and set aside and plaintiff's suit dismissed and his demand rejected at his cost.

HAMITER, J., dissents.